**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **DR. HAROLD E. RAFUSE,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO.  6:20-cv-00718** |
| **ADVANCED CONCEPTS AND** | § | |
| **TECHNOLOGIES, INTERNATIONAL,** | § | |
| **LLC and MICHAEL A. NIGGEL,** | § | |
| | § | |
| *Defendants*. | § | |

<u>**NOTICE OF REMOVAL**</u>

Defendants Advanced Concepts and Technologies, International, LLC ("ACT I") and Michael A. Niggel ("Mr. Niggel") (together, "Defendants") pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 hereby give notice of the removal of this action from the 74th Judicial District Court of McLennan County, Texas (the "State Court") to this Court.  In support thereof, Defendants would respectfully show the Court the following:

**I.**

1.      Plaintiff Dr. Harold E. Rafuse ("Plaintiff") filed a lawsuit in the State Court captioned *Dr. Harold E. Rafuse v. Advanced Concepts and Technologies, International, LLC and Michael A. Niggel*, Cause No. 2020-2066-3 (the "State Court Action").  Plaintiff's sole cause of action in the State Court Action is a declaratory judgment against Defendants.

2.      Defendants were served with Plaintiff's Original Petition on July 9, 2020.  This Notice of Removal is timely because it has been filed within 30 days of service of Plaintiff's Original Petition as required under 28 U.S.C. § 1446(b).

3.      Pursuant to 28 U.S.C. §1446(a), Defendants have attached a copy of all process, pleadings, and orders served in the State Court Action as Exhibit A.

4.      The Court has original jurisdiction over this case pursuant to the Court's diversity jurisdiction provided under 28 U.S.C. § 1332(a).

5.      As alleged in Plaintiff's Original Petition, Plaintiff seeks a declaratory judgment that Plaintiff does not owe Defendants any amounts. [Exhibit A, Plaintiff's Original Petition at p. 5]. However, Plaintiff acknowledges that this dispute involves whether "Plaintiff owes one-half of $448,238," or $224,119. [*Id.*]. Accordingly, the amount in controversy in this matter exceeds $75,000, exclusive of interest and costs.

6.      This dispute is between citizens of different states. Plaintiff is a citizen of Texas. [*Id.* at p. 1].  Mr. Niggel is a resident of Arlington County, Virginia, and is therefore a citizen of Virginia. [*Id.* at p. 2].  ACT I is a Virginia limited liability company, and Mr. Niggel is its sole member. [Exhibit B, Declaration of Michael A. Niggel at ¶ 3]. ACT I is therefore a citizen of Virginia for diversity of citizenship purposes. *See Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008) ("[T]he citizenship of a LLC is determined by the citizenship of all of its members."). As required under § 1332(a), there is complete diversity of citizenship between Plaintiff and Defendants.

7.      Venue is proper in this Court under 28 U.S.C. § 1441(a) because the state court from which the State Court Action is being removed lies within the Western District of Texas.

8.      Plaintiff demanded a jury trial in the State Court Action.

## II.

For the foregoing reasons, Defendants respectfully ask that the State Court Action be removed to this Court, and for all other relief, in law or in equity, to which they may be justly entitled.

Respectfully submitted,

*/s/ Daniel D. McGuire*

Daniel D. McGuire
State Bar No. 24081282
POLSINELLI PC
2950 N. Harwood, Suite 2100
Dallas, Texas 75201
Telephone: (214) 397-0030
Facsimile:  (214) 397-0033
dmcguire@polsinelli.com

*Counsel for Defendants Advanced Concepts and Technologies, International, LLC and Michael A. Niggel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 7, 2020, the foregoing was served via the Court's electronic filing system in accordance with Rule 5 of the Federal Rules of Civil Procedure on the following counsel of record:

Jon R. Ker
LAW OFFICE OF JON R. KER, P.C.
P.O. Box 1087
Hewitt, Texas 76643
attorney@jonrkerpc.com

*Counsel for Plaintiff Dr. Harold E. Rafuse*

*/s/ Daniel D. McGuire*
Daniel D. McGuire

# EXHIBIT A

**FILED**
**MCLENNAN COUNTY**
**8/3/2020 10:03 AM**
**JON R. GIMBLE**
**DISTRICT CLERK**
**Nichelle Maddison**

CAUSE NO.  2020-2066-3

| | | |
|---|---|---|
| DR. HAROLD E. RAFUSE, | §<br>§<br>§ | IN THE DISTRICT COURT OF |
| *Plaintiff,* | §<br>§ | |
| v. | §<br>§ | |
| ADVANCED CONCEPTS AND | §<br>§ | MCLENNAN COUNTY, TEXAS |
| TECHNOLOGIES, INTERNATIONAL, | § | |
| LLC and MICHAEL A. NIGGEL, | §<br>§ | |
| *Defendants.* | §<br>§ | 74TH JUDICIAL DISTRICT |

## DEFENDANTS' ORIGINAL ANSWER, AFFIRMATIVE DEFENSES, AND ORIGINAL COUNTERCLAIMS

Defendant and Counterclaimant Advanced Concepts and Technologies, International, LLC ("ACT I" or "Counterclaimant") and Defendant Michael A. Niggel ("Mr. Niggel") (together, "Defendants") hereby file this Original Answer, Affirmative Defenses, and Original Counterclaims, and would respectfully show the Court the following:

### I.   GENERAL DENIAL

1.      Subject to the affirmative defenses below, and pursuant to Rule 92 of the Texas Rules of Civil Procedure, Defendants generally deny the allegations in Plaintiff's Petition and demand strict proof thereof in accordance with the laws of the State of Texas.

### II.   AFFIRMATIVE DEFENSES

Pleading further, and subject to the general denial above, Defendants assert the following affirmative defenses:

2.      Plaintiff has failed to state a claim against Defendants.

3.      Mr. Niggel is not a proper party and has been wrongly sued in his individual capacity in this lawsuit. Although Mr. Niggel was a party to the Purchase Agreement (defined below), he is not a party to the agreements that form the basis of the dispute asserted by Plaintiff,

and/or Mr. Niggel does not have any obligations under such agreements that would subject him to liability of any kind.

### III.   COUNTERCLAIMS

**A.      Discovery Control Plan.**

4.      Counterclaimant ACT I currently intends to conduct discovery under Level 2 as provided in Rule 190.3 of the Texas Rules of Civil Procedure.

**B.      Parties**

5.      Counterclaimant ACT I is a limited liability company organized under the laws of the State of Virginia. ACT I's principal place of business is 200 12th Street South, Suite 1101, Arlington, Virginia 22202.

6.      Counter-defendant Dr. Harold E. Rafuse ("Dr. Rafuse") is an individual citizen of the State of Texas. Dr. Rafuse has already appeared in this lawsuit.

**C.      Jurisdiction and Venue**

7.      Jurisdiction is proper in this Court because the wrongful acts or omissions described herein occurred in McLennan County, Texas, and the damages sought by Counterclaimant are within the jurisdictional limits of the Court.

8.      The Court has personal jurisdiction over Dr. Rafuse because he initiated this lawsuit and thereby subjected himself to the jurisdiction of the Court. Dr. Rafuse is also a citizen of the State of Texas.

9.      Venue is proper under § 15.002 of the Texas Civil Practice and Remedies Code because Dr. Rafuse initiated this lawsuit in this Court, and all or a substantial part of the events or omissions giving rise to the claims asserted herein occurred in McLennan County, Texas.

**D.**     **Statement of Damages Under TEX. R. CIV. P. 47**

10.     At this time, Counterclaimant seeks damages in the form of monetary relief over $200,000, but not more than $1,000,000, exclusive of penalties, costs, expenses, pre-judgment interest, and attorneys' fees. The damages sought are within the jurisdictional limits of the Court.

**E.**     **Facts**

11.     ACT I specializes in providing total acquisition management services to, among other clients, federal government agencies such as the Department of Defense and the Department of Homeland Security.  ACT I was founded jointly by Dr. Rafuse and Mr. Niggel.

12.     In 2008, Dr. Rafuse sold his membership interests in ACT I in a June 30, 2008 Limited Liability Corporation Equity Purchase Agreement and Mutual Release Agreement (the "Purchase Agreement"). In connection with the Purchase Agreement, Dr. Rafuse and ACT I entered into a June 30, 2008 Installment Note (the "Note"), which provided that ACT I would pay Dr. Rafuse a total amount of $2 million, including principal and interest, to be paid by March 2013 (the "Note").

13.     The Note was secured by a June 30, 2008 Membership Equity Pledge Agreement Accompanying Equity Purchase (the "Pledge Agreement"), under which ACT I granted Dr. Rafuse a security interest in half of the membership interests in ACT I until the Note was fully paid. The parties also entered into a June 30, 2008 Indemnity Agreement for Post Closing Events (the "Post-Closing Indemnity Agreement"), which was intended to indemnify Dr. Rafuse from certain liabilities caused by events after the closing of the Purchase Agreement.

14.     The sale of Dr. Rafuse's interest in ACT I, including execution of the Purchase Agreement, the Note, the Pledge Agreement, and the Post-Closing Indemnity Agreement, is collectively referred to herein as the "Sale Transaction."

15.     As a government contractor, ACT I is regularly subjected to reconciliation audits by the federal government regarding amounts paid to ACT I under its respective government contracts. These audits often take many years before they are initiated, and even longer before they are resolved.

16.     In anticipation of such audits, as well as the associated or other potential liabilities that could subsequently arise for ACT I due to events and circumstances in effect prior to the Sale Transaction, the Pledge Agreement included an indemnity obligation whereby Dr. Rafuse agreed to pay 50% of ACT I's liability for such audits (the "Audit Indemnity Obligation"). Specifically, the Pledge Agreement provides, "With respect to any contract actions resulting in a liability against the company for performance for operating events occurring prior to closing such as contract adjustments, audit adjustments, finance adjustments, contract claims or tax issues the parties shall each be responsible for fifty percent of the negative financial impact on the company". [Pledge Agreement, § 23].

17.     ACT I subsequently paid off the Note earlier than scheduled. In connection with that payment, ACT I and Plaintiff entered into a May 31, 2011 agreement entitled "Accord and Satisfaction and General Release" (the "Accord and Satisfaction"). In the Accord and Satisfaction, ACT I agreed to release Plaintiff from all claims "arising out of, related to, or in connection with, any matter, right, cause or thing whatsoever, existing prior to or as of the Effective Date with respect to (a) the [Purchase Agreement]; and (b) the [Note]." [Accord and Satisfaction, § 4].

18.     The Accord and Satisfaction did not release Dr. Rafuse from the Audit Indemnity Obligation in the Pledge Agreement. Nor did the Accord and Satisfaction release Dr. Rafuse from his "responsibility and or [sic] liability for any causes of action, known or unknown, by

third parties unrelated to the Purchase Agreement, including but not limited to any actions, known or unknown that may have existed at the time of or prior to the execution of the Purchase Agreement." [*Id.*].

19.     In 2014, the federal government completed its audit of one of ACT I's contracts, known as CBRN, for the period from 2005-2008, the purpose of which was to validate payments made to ACT I during this period (the "Audit"). As a result of this Audit, the government initially determined that ACT I owed the government a total refund of $2,065,091 for the 2005-2008 contract period. ACT I vigorously disputed the amounts claimed by the government and contested the Audit by, among other things, hiring an expert to assist ACT I to dispute the government's methodology.

20.     Ultimately, following diligent and ongoing negotiations with the government, ACT I was able to fully resolve the Audit by paying $448,238 (the "Audit Amount") on or before June 30, 2020.

21.     ACT I sent correspondence to Dr. Rafuse dated June 11, 2020 explaining the circumstances of the Audit, describing the Audit Amount ACT I had negotiated, and requesting Dr. Rafuse's agreement to pay half of the Audit Amount as required under the Pledge Agreement and the Audit Indemnity Obligation. Dr. Rafuse, through counsel, rejected the Audit Indemnity Obligation and refused to pay any portion of the Audit Amount.

22.     ACT I subsequently paid the full Audit Amount to mitigate its damages and avoid additional penalties and interest.

**F.      First Cause of Action – Breach of Contract**

23.      ACT I realleges each and every allegation in the prior paragraphs as if fully set forth herein.

24.      The Pledge Agreement is a valid and enforceable contract between ACT I and Dr. Rafuse.

25.      Under the Pledge Agreement, Dr. Rafuse agreed to indemnify ACT I and to be responsible for 50% of the "negative financial impact on the company," including the Audit Amount that was paid by ACT I.

26.      By refusing to pay his portion of the Audit Amount contrary to the Audit Indemnity Obligation in the Pledge Agreement, Dr. Rafuse breached the Pledge Agreement.

27.      Dr. Rafuse's breach of the Pledge Agreement has caused damages to ACT I, including monetary damages in the amount of at least $224,119, in addition to expenses, costs, and other financial amounts incurred by ACT I in contesting the Audit.

**G.      Second Cause of Action – Declaratory Judgment**

28.      ACT I realleges each and every allegation in the prior paragraphs as if fully set forth herein.

29.      There is a dispute and controversy between ACT I and Dr. Rafuse concerning the Pledge Agreement and the Accord and Satisfaction. Specifically, the parties dispute whether Dr. Rafuse is obligated under the Pledge Agreement to pay 50% of the Audit Amount and any other amounts incurred by ACT I in connection with the Audit.

30.      Pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code, ACT I asks the Court for a declaratory judgment that Dr. Rafuse is obligated to pay 50% of all amounts

incurred by ACT I in connection with the Audit, including, but not limited to, half of the Audit Amount.

**H.      Attorneys' Fees**

31.     ACT I realleges each and every allegation in the prior paragraphs as if fully set forth herein.

32.     ACT I is entitled to recover attorneys' fees, costs, and expenses from Dr. Rafuse under § 38.001 of the Texas Civil Practice and Remedies Code.

33.     ACT I is also entitled to recover attorneys' fees, costs, and expenses from Dr. Rafuse under § 37.009 of the Texas Civil Practice and Remedies Code in connection with its declaratory judgment claim.

**I.      Damages and Remedies Sought**

34.     As a proximate and producing cause of Dr. Rafuse's wrongful acts and omissions described herein, ACT I is entitled to the following damages and remedies:

    a.      Actual and Consequential damages;

    b.      Attorneys' fees and expenses;

    c.      Court costs;

    d.      Pre-judgment and post-judgment interest; and

    e.      All other relief, in law or in equity, to which ACT I may be justly entitled.

## IV.    CONCLUSION AND PRAYER

For the foregoing reasons, Defendants pray that Plaintiff take nothing by his claims and ask the Court to enter judgment in Defendants' favor as to all claims and causes of action against them; to award Counterclaimant all damages and remedies sought herein in connection with its counterclaims; to award Defendants their attorneys' fees and costs; and to grant Defendants any and all relief, in law or in equity, to which they may be justly entitled.

Respectfully submitted,

Daniel D. McGuire
State Bar No. 24081282
POLSINELLI PC
2950 N. Harwood, Suite 2100
Dallas, Texas 75201
Telephone: (214) 397-0030
Facsimile: (214) 397-0033
dmcguire@polsinelli.com

*Counsel for Defendants Advanced Concepts and Technologies, International, LLC and Michael A. Niggel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 3, 2020, a true and correct copy of the foregoing has been served on the following counsel of record in accordance with Texas Rule of Civil Procedure Rule 21a:

Jon R. Ker
LAW OFFICE OF JON R. KER, P.C.
P.O. Box 1087
Hewitt, Texas 76643
attorney@jonrkerpc.com

_____
Daniel D. McGuire

Print this page

# Case # 2020-2066-3 - DR HAROLD E RAFUSE VS ADVANCED CONCEPTS AND TECHNOLOGIES INTERNATIONAL LLC ET AL (74TH)

## Case Information

| | |
|---|---|
| Location | McLennan County - District Clerk |
| Date Filed | 7/22/2020 4:27 PM |
| Case Number | 2020-2066-3 |
| Case Description | DR HAROLD E RAFUSE VS ADVANCED CONCEPTS AND TECHNOLOGIES INTERNATIONAL LLC ET AL |
| Assigned to Judge | 74TH |
| Attorney | Jon Ker |
| Firm Name | Jon R. Ker |
| Filed By | Jon Ker |
| Filer Type | Not Applicable |

## Fees

| | |
|---|---|
| Convenience Fee | $0.00 |
| Total Court Case Fees | $0.00 |
| Total Court Party Fees | $0.00 |
| Total Court Filing Fees | $0.00 |
| Total Court Service Fees | $0.00 |
| Total Filing & Service Fees | $0.00 |
| Total Provider Service Fees | $0.00 |
| Total Provider Tax Fees | $0.00 |
| Total Taxes (for non-court fees) | $0.00 |
| Grand Total | $0.00 |

## Payment

| | |
|---|---|
| Account Name | Jon R. Ker, P.C. |
| Transaction Amount | $0.00 |
| Transaction Response | |
| Transaction ID | 66270641 |
| Order # | |

---

## No Fee Documents

| | |
|---|---|
| Filing Type | EFile |
| Filing Code | No Fee Documents |
| Motion Code | |

| | |
|---|---|
| Filing Description | Return of Service |
| Reference Number | #976.6 - Rafuse |
| Comments | |
| Status | Accepted |
| Accepted Date | 7/23/2020 1:43 PM |

**Fees**

| | |
|---|---|
| Court Fee | $0.00 |
| Service Fee | $0.00 |

**Documents**

*Lead Document*     Rafuse v. Niggel.pdf     [Original]     [Transmitted]

# NON-RESIDENT CITATION

**FILED**
**MCLENNAN COUNTY**
**7/22/2020 4:27 PM**
**JON R. GIMBLE**
**DISTRICT CLERK**
Tiffany Crim

PAPER# 2
ATTY

**THE STATE OF TEXAS**

**Cause No: 2020-2066-3**

**TO:  MICHAEL A. NIGGEL, INDIVIDUALLY, DEFENDANT – 2791 N. QUEBEC STREET, ARLINGTON, VIRGINIA 22207**

**GREETINGS:**

**YOU ARE HEREBY COMMANDED** to appear before the Honorable District Court below**,** of McLennan County, Texas, at the Courthouse of said County located at 501 Washington Avenue in Waco, Texas, by filing a written answer with the Clerk of the Court, at or before 10 o'clock A.M. of the Monday next after the expiration of twenty days after the date of service of this citation, to the pleading described below, and you are hereby served with a copy of Plaintiff's Discovery described below, to which you must file a written answer as required by law in the cause number described below on the docket of said court, and styled,

PARTIES TO THIS ACTION ARE:

**DR. HAROLD E. RAFUSE, BY AND THROUGH HIS ATTORNEY**          Plaintiff
**JON R. KER, P.C.**

VS.

**ADVANCED CONCEPTS AND TECHNOLOGIES, INTERNATIONAL, LLC,**          Defendants
**A VIRGINAL LIMITED LIABILITY COMPANY, AND MICHAEL A. NIGGEL,**
**INDIVIDUALLY**

Court:  **74TH JUDICIAL DISTRICT**
Pleading:  **PLAINTIFF'S ORIGINAL PETITION**
Pleading File Date:  **JUNE 30, 2020**
Discovery Requests:  **REQUEST FOR DISCLOSURES AND PRODUCTION**
Cause No:  **2020-2066-3**

### *NOTICE*

*You have been sued.  You may employ an attorney.  If you or your attorney does not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and the above pleading and discovery, a default judgment may be taken against you.*

The officer executing this citation shall promptly serve the same according to requirements of law, and the mandates hereof, and make due return as the law directs.

**ISSUED AND GIVEN UNDER MY HAND AND SEAL OF OFFICE,** at Waco, McLennan County, Texas.
Issue Date:  **JULY 6, 2020.**

**JON R. KER**                               Jon R. Gimble, District Clerk
**P.O. BOX 1087**                            501 Washington Ave., Suite 300 Annex
**HEWITT, TEXAS 76643**                      Waco, McLennan County, Texas 76701
Attorney for Plaintiff

By: _Paige Edmundson_ , Deputy
**PAIGE EDMUNDSON**



# RETURN OF SERVICE

**Style:** **DR. HAROLD E. RAFUSE, BY AND THROUGH HIS ATTORNEY JON R. KER, P.C. VS. ADVANCED CONCEPTS AND TECHNOLOGIES, INTERNATIONAL, LLC, A VIRGINAL LIMITED LIABILITY COMPANY, AND MICHAEL A. NIGGEL, INDIVIDUALLY**
Cause No.: **2020-2066-3**
Court: **74TH JUDICIAL DISTRICT**
Paper#: **2**
Instrument(s) Served:  Pleading, **PLAINTIFF'S ORIGINAL PETITION**, and Discovery, **REQUEST FOR DISCLOSURES AND PRODUCTION**

THE STATE OF _Texas_

COUNTY OF _McLennan_

Before me, the undersigned authority, on this day personally appeared _Steve Russell_

who after being by me duly sworn deposes and says that he is above twenty-one years of age, of sound mind, and in no manner interested in the within styled and numbered cause, and competent to make oath of the facts herein stated.

Came to hand on the _9th_ day of _July_, 20_20_ at _11:00_ o'clock _A_ M. and executed on the _13th_ day of _July_, 20_20_ by delivering to the party designated in the citation, to-wit: _CM-RRR 7020 0090 0001 2689 4497_ at _2:03_ o'clock _P_ M; in person, a true copy of this citation with a true and correct copy of the pleading and discovery attached thereto, having first endorsed on such copy of said citation the date of delivery.

FEES:  Serving one (1) copy

Total $ _50.00_

x _Steven A. Russell_

_McLennan_ County, _Tx_ (State)

By _____

NO SHERIFF OR CONSTABLE FEES COLLECTED

**NOT EXECUTED FOR THE FOLLOWING REASONS** _____

_____

and having attempted on _____.

"My name is _____ (First) _____ (Middle) _____ (Last),

my date of birth is _____, and my address is _____

_____.

I declare under penalty of perjury that the foregoing is true and correct.  Executed in _____ County,

State  of  Texas,  on  the  _____  day  of  _____  (Month)  _____  (Year)

_____ (Signature) Declarant"

Add a tracking number

Showing:  | All |



**70200090000126894497**

**Delivered:**
ARLINGTON, VA 22207 on July 13, 2020 at 2:03 pm

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Michael Niggel
2791 N. Quebec St.
Arlington, VA 22207

9590 9402 2932 7094 8185 51

2. Article Number (Transfer from service label)
7020 0090 0001 2689 4497

PS Form **3811**, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)      C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:          ☐ No

3. Service Type
☑ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ ____ Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

ARLINGTON, VA 22207

| Certified Mail Fee | |
| $3.55 | 0643 |

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)          $ $0.00
☐ Return Receipt (electronic)        $ $0.00
☐ Certified Mail Restricted Delivery $ $0.00
☐ Adult Signature Required           $ $0.00
☐ Adult Signature Restricted Delivery $ $0.00

Postmark
Here

Postage
$ $2.20

Total Postage and Fees
$ $8.60

07/09/2020

Sent To
Michael Niggel
Street and Apt. No., or PO Box No.
2791 N. Quebec St
City, State, ZIP+4®
Arlington, VA 22207

PS Form 3800, April 2015 PSN 7530-02-000-9047     See Reverse for Instructions

7020 0090 0001 2689 4497

UPDATED 7/22/2020 1:31 PM

Case 6:20-cv-00718   Document 1   Filed 08/07/20   Page 20 of 68

Print this page

# Case # 2020-2066-3 - DR HAROLD E RAFUSE VS ADVANCED CONCEPTS AND TECHNOLOGIES INTERNATIONAL LLC ET AL (74TH)

## Case Information

| | |
|---|---|
| Location | McLennan County - District Clerk |
| Date Filed | 7/13/2020 10:09 AM |
| Case Number | 2020-2066-3 |
| Case Description | DR HAROLD E RAFUSE VS ADVANCED CONCEPTS AND TECHNOLOGIES INTERNATIONAL LLC ET AL |
| Assigned to Judge | 74TH |
| Attorney | Jon Ker |
| Firm Name | Jon R. Ker |
| Filed By | Jon Ker |
| Filer Type | Not Applicable |

## Fees

| | |
|---|---|
| Convenience Fee | $0.00 |
| Total Court Case Fees | $0.00 |
| Total Court Party Fees | $0.00 |
| Total Court Filing Fees | $0.00 |
| Total Court Service Fees | $0.00 |
| Total Filing & Service Fees | $0.00 |
| Total Provider Service Fees | $0.00 |
| Total Provider Tax Fees | $0.00 |
| Total Taxes (for non-court fees) | $0.00 |
| Grand Total | $0.00 |

## Payment

| | |
|---|---|
| Account Name | Jon R. Ker, P.C. |
| Transaction Amount | $0.00 |
| Transaction Response | |
| Transaction ID | 65847734 |
| Order # | |

FILED
2020 JUL 13 PM 2: 58
JON R. GIMBLE
DISTRICT CLERK
MCLENNAN CO. TX.
_____DEPUTY

---

## No Fee Documents

| | |
|---|---|
| Filing Type | EFile |
| Filing Code | No Fee Documents |
| Motion Code | |

Case 6:20-cv-00718   Document 1   Filed 08/07/20   Page 21 of 68

Filing Description
Reference Number                    #976.6 - Rafuse
Comments
Status                              Accepted
Accepted Date                      7/13/2020 10:58 AM
**Fees**
Court Fee                          $0.00
Service Fee                        $0.00
**Documents**
*Lead Document*                    20200713_Rafuse Return of Service.pdf   [Original]  [Transmitted]

**RETURN OF SERVICE**

Tiffany Crim

**FILED**
**MCLENNAN COUNTY**
**7/13/2020 10:09 AM**
**JON R. GIMBLE**
**DISTRICT CLERK**

Style: **DR. HAROLD E. RAFUSE, BY AND THROUGH HIS ATTORNEY JON R. KER, P.C. VS. ADVANCED CONCEPTS AND TECHNOLOGIES, INTERNATIONAL, LLC, A VIRGINAL LIMITED LIABILITY COMPANY, AND MICHAEL A. NIGGEL, INDIVIDUALLY**
Cause No.: **2020-2066-3**
Court: **74TH JUDICIAL DISTRICT**
Paper#: **1**
Instrument(s) Served: Pleading, **PLAINTIFF'S ORIGINAL PETITION**, and Discovery, **REQUEST FOR DISCLOSURES AND PRODUCTION**

Came to hand on the _9th_ day of _July_, 20_20_ at _11:00_ o'clock _A_ M. and executed on the _9th_ day of _July_, 20_20_ by delivering to the party designated in the citation, to-wit: _delivered to the office of the registered agent at 1105 Wooded Acres, Ste. 500, Waco, Texas_

at _11:30_ o'clock _A_ M; in person, a true copy of this citation with a true and correct copy of the pleading and discovery attached thereto, having first endorsed on such copy of said citation the date of delivery.

FEES: Serving one (1) copy

Total $ _75 00_

~~NO SHERIFF OR CONSTABLE FEES COLLECTED~~

_Steven A. Russell_

_Mc Lennan_ County, Texas

By _____

**NOT EXECUTED FOR THE FOLLOWING REASONS** _____

and having attempted on _____.

"My name is _____ (First) _____ (Middle) _____ (Last), my date of birth is _____, and my address is _____

_____.

I declare under penalty of perjury that the foregoing is true and correct.  Executed in _____ County, State of Texas, on the _____ day of _____ (Month) _____ (Year)

_____ (Signature) Declarant"

# CITATION

**THE STATE OF TEXAS**

PAPER# 1
ATTY

**Cause No: 2020-2066-3**

**TO:   ADVANCED CONCEPTS AND TECHNOLOGIES, INTERNATIONAL, LLC, A VIRGINAL LIMITED LIABILITY COMPANY, DEFENDANT - BY SERVING ITS REGISTERED AGENT, WILLIAM N. WARD, AT 1105 WOODED ACRES, SUITE 500, WACO, TEXAS 76710**

**GREETINGS:**

**YOU ARE HEREBY COMMANDED** to appear before the Honorable District Court below**,** of McLennan County, Texas, at the Courthouse of said County located at 501 Washington Avenue in Waco, Texas, by filing a written answer with the Clerk of the Court, at or before 10 o'clock A.M. of the Monday next after the expiration of twenty days after the date of service of this citation, to the pleading described below, and you are hereby served with a copy of Plaintiff's Discovery described below, to which you must file a written answer as required by law in the cause number described below on the docket of said court, and styled,

PARTIES TO THIS ACTION ARE:

**DR. HAROLD E. RAFUSE, BY AND THROUGH HIS ATTORNEY**          Plaintiff
**JON R. KER, P.C.**

VS.

**ADVANCED CONCEPTS AND TECHNOLOGIES, INTERNATIONAL, LLC,**          Defendants
**A VIRGINAL LIMITED LIABILITY COMPANY, AND MICHAEL A. NIGGEL,**
**INDIVIDUALLY**

Court:  **74TH JUDICIAL DISTRICT**
Pleading:  **PLAINTIFF'S ORIGINAL PETITION**
Pleading File Date:  **JUNE 30, 2020**
Discovery Requests:  **REQUEST FOR DISCLOSURES AND PRODUCTION**
Cause No:  **2020-2066-3**

### NOTICE

*You have been sued.  You may employ an attorney.  If you or your attorney does not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and the above pleading and discovery, a default judgment may be taken against you.*

The officer executing this citation shall promptly serve the same according to requirements of law, and the mandates hereof, and make due return as the law directs.

**ISSUED AND GIVEN UNDER MY HAND AND SEAL OF OFFICE,** at Waco, McLennan County, Texas.
Issue Date:  **JULY 6, 2020.**

**JON R. KER**
**P.O. BOX 1087**
**HEWITT, TEXAS 76643**
Attorney for Plaintiff

Jon R. Gimble, District Clerk
501 Washington Ave., Suite 300 Annex
Waco, McLennan County, Texas 76701

By: _Paige Edmundson_ , Deputy
       **PAIGE EDMUNDSON**



## NON-RESIDENT CITATION



**PAPER# 2**
**ATTY**

**THE STATE OF TEXAS**

**Cause No: 2020-2066-3**

**TO: MICHAEL A. NIGGEL, INDIVIDUALLY, DEFENDANT – 2791 N. QUEBEC STREET, ARLINGTON, VIRGINIA 22207**

**GREETINGS:**

**YOU ARE HEREBY COMMANDED** to appear before the Honorable District Court below, of McLennan County, Texas, at the Courthouse of said County located at 501 Washington Avenue in Waco, Texas, by filing a written answer with the Clerk of the Court, at or before 10 o'clock A.M. of the Monday next after the expiration of twenty days after the date of service of this citation, to the pleading described below, and you are hereby served with a copy of Plaintiff's Discovery described below, to which you must file a written answer as required by law in the cause number described below on the docket of said court, and styled,

PARTIES TO THIS ACTION ARE:

| | |
|---|---|
| **DR. HAROLD E. RAFUSE, BY AND THROUGH HIS ATTORNEY JON R. KER, P.C.** | Plaintiff |

VS.

| | |
|---|---|
| **ADVANCED CONCEPTS AND TECHNOLOGIES, INTERNATIONAL, LLC, A VIRGINAL LIMITED LIABILITY COMPANY, AND MICHAEL A. NIGGEL, INDIVIDUALLY** | Defendants |

Court: **74TH JUDICIAL DISTRICT**
Pleading: **PLAINTIFF'S ORIGINAL PETITION**
Pleading File Date: **JUNE 30, 2020**
Discovery Requests: **REQUEST FOR DISCLOSURES AND PRODUCTION**
Cause No: **2020-2066-3**

### NOTICE

*You have been sued. You may employ an attorney. If you or your attorney does not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and the above pleading and discovery, a default judgment may be taken against you.*

The officer executing this citation shall promptly serve the same according to requirements of law, and the mandates hereof, and make due return as the law directs.

**ISSUED AND GIVEN UNDER MY HAND AND SEAL OF OFFICE,** at Waco, McLennan County, Texas.
Issue Date: **JULY 6, 2020.**

**JON R. KER**
**P.O. BOX 1087**
**HEWITT, TEXAS 76643**
Attorney for Plaintiff

Jon R. Gimble, District Clerk
501 Washington Ave., Suite 300 Annex
Waco, McLennan County, Texas 76701

By: _Paige Edmundson_ , Deputy
**PAIGE EDMUNDSON**



# RETURN OF SERVICE

Style:  **DR. HAROLD E. RAFUSE, BY AND THROUGH HIS ATTORNEY JON R. KER, P.C. VS. ADVANCED CONCEPTS AND TECHNOLOGIES, INTERNATIONAL, LLC, A VIRGINAL LIMITED LIABILITY COMPANY, AND MICHAEL A. NIGGEL, INDIVIDUALLY**
Cause No.:  **2020-2066-3**
Court:  **74TH JUDICIAL DISTRICT**
Paper#:  **2**
Instrument(s) Served:  Pleading, **PLAINTIFF'S ORIGINAL PETITION**, and Discovery, **REQUEST FOR DISCLOSURES AND PRODUCTION**

THE STATE OF _____

COUNTY OF _____

Before me, the undersigned authority, on this day personally appeared _____ _____

who after being by me duly sworn deposes and says that he is above twenty-one years of age, of sound mind, and

in no manner interested in the within styled and numbered cause, and competent to make oath of the facts herein

stated.

Came to hand on the _____ day of _____, 20_____ at _____ o'clock _____M. and executed

on the _____ day of _____, 20_____ by delivering to the party designated in the citation,

to-wit:_____ at _____ o'clock _____M; in person, a true

copy of this citation with a true and correct copy of the pleading and discovery attached thereto, having first

endorsed on such copy of said citation the date of delivery.

FEES:  Serving one (1) copy                                    _____

Total $_____     NO SHERIFF OR CONSTABLE        _____ County, _____ (State)
                         FEES COLLECTED

                                                            By _____

**NOT EXECUTED FOR THE FOLLOWING REASONS** _____

_____

and having attempted on _____.

"My name is _____ (First) _____ (Middle) _____ (Last),

my date of birth is _____, and my address is _____

_____.

I declare under penalty of perjury that the foregoing is true and correct.  Executed in _____ County,

State of Texas, on the _____ day of _____ (Month) _____ (Year)

_____ (Signature) Declarant"

# CITATION



**THE STATE OF TEXAS**

PAPER# 1
ATTY

**Cause No: 2020-2066-3**

**TO: ADVANCED CONCEPTS AND TECHNOLOGIES, INTERNATIONAL, LLC, A VIRGINAL LIMITED LIABILITY COMPANY, DEFENDANT - BY SERVING ITS REGISTERED AGENT, WILLIAM N. WARD, AT 1105 WOODED ACRES, SUITE 500, WACO, TEXAS 76710**

**GREETINGS:**

**YOU ARE HEREBY COMMANDED** to appear before the Honorable District Court below, of McLennan County, Texas, at the Courthouse of said County located at 501 Washington Avenue in Waco, Texas, by filing a written answer with the Clerk of the Court, at or before 10 o'clock A.M. of the Monday next after the expiration of twenty days after the date of service of this citation, to the pleading described below, and you are hereby served with a copy of Plaintiff's Discovery described below, to which you must file a written answer as required by law in the cause number described below on the docket of said court, and styled,

PARTIES TO THIS ACTION ARE:

**DR. HAROLD E. RAFUSE, BY AND THROUGH HIS ATTORNEY**          Plaintiff
**JON R. KER, P.C.**

VS.

**ADVANCED CONCEPTS AND TECHNOLOGIES, INTERNATIONAL, LLC,**          Defendants
**A VIRGINAL LIMITED LIABILITY COMPANY, AND MICHAEL A. NIGGEL,**
**INDIVIDUALLY**

Court: **74TH JUDICIAL DISTRICT**
Pleading: **PLAINTIFF'S ORIGINAL PETITION**
Pleading File Date: **JUNE 30, 2020**
Discovery Requests: **REQUEST FOR DISCLOSURES AND PRODUCTION**
Cause No: **2020-2066-3**

## NOTICE

*You have been sued. You may employ an attorney. If you or your attorney does not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and the above pleading and discovery, a default judgment may be taken against you.*

The officer executing this citation shall promptly serve the same according to requirements of law, and the mandates hereof, and make due return as the law directs.

**ISSUED AND GIVEN UNDER MY HAND AND SEAL OF OFFICE,** at Waco, McLennan County, Texas.
Issue Date: **JULY 6, 2020.**

**JON R. KER**                          Jon R. Gimble, District Clerk
**P.O. BOX 1087**                       501 Washington Ave., Suite 300 Annex
**HEWITT, TEXAS 76643**                 Waco, McLennan County, Texas 76701
Attorney for Plaintiff

By: _____, Deputy
**PAIGE EDMUNDSON**



# RETURN OF SERVICE

.

Style: **DR. HAROLD E. RAFUSE, BY AND THROUGH HIS ATTORNEY JON R. KER, P.C. VS. ADVANCED CONCEPTS AND TECHNOLOGIES, INTERNATIONAL, LLC, A VIRGINAL LIMITED LIABILITY COMPANY, AND MICHAEL A. NIGGEL, INDIVIDUALLY**

Cause No.: **2020-2066-3**

Court: **74TH JUDICIAL DISTRICT**

Paper#: **1**

Instrument(s) Served:  Pleading, **PLAINTIFF'S ORIGINAL PETITION**, and Discovery, **REQUEST FOR DISCLOSURES AND PRODUCTION**

Came to hand on the _____ day of _____, 20_____ at _____o'clock _____M. and executed on the _____ day

of _____, 20_____ by delivering to the party designated in the citation, to-wit:

_____

_____

at _____o'clock ___M; in person, a true copy of this citation with a true and correct copy of the pleading and discovery

attached thereto, having first endorsed on such copy of said citation the date of delivery.

FEES:  Serving one (1) copy

Total $_____     NO SHERIFF OR CONSTABLE FEES COLLECTED

_____

_____ County, Texas

By _____

**NOT EXECUTED FOR THE FOLLOWING REASONS** _____

and having attempted on _____.

"My name is _____ (First) _____ (Middle) _____ (Last), my

date of birth is _____, and my address is _____

_____.

I declare under penalty of perjury that the foregoing is true and correct.  Executed in _____ County, State

of Texas, on the _____ day of _____ (Month) _____ (Year)

_____ (Signature) Declarant"

Print this page

# Case # 2020-2066-3 - DR HAROLD E RAFUSE VS ADVANCED CONCEPTS AND TECHNOLOGIES INTERNATIONAL LLC ET AL (74TH)

## Case Information

| | |
|---|---|
| Location | McLennan County - District Clerk |
| Date Filed | 7/1/2020 1:42 PM |
| Case Number | 2020-2066-3 |
| Case Description | DR HAROLD E RAFUSE VS ADVANCED CONCEPTS AND TECHNOLOGIES INTERNATIONAL LLC ET AL |
| Assigned to Judge | 74TH |
| Attorney | Jon Ker |
| Firm Name | Jon R. Ker |
| Filed By | Jon Ker |
| Filer Type | Not Applicable |

## Fees

| | |
|---|---|
| Convenience Fee | $2.37 |
| Total Court Case Fees | $0.00 |
| Total Court Party Fees | $0.00 |
| Total Court Filing Fees | $82.00 |
| Total Court Service Fees | $0.00 |
| Total Filing & Service Fees | $0.00 |
| Total Provider Service Fees | $0.00 |
| Total Provider Tax Fees | $0.00 |
| Total Taxes (for non-court fees) | $0.00 |
| Grand Total | $84.37 |

## Payment

| | |
|---|---|
| Account Name | Jon R. Ker, P.C. |
| Transaction Amount | $84.37 |
| Transaction Response | Approved |
| Transaction ID | 65494014 |
| Order # | 044189362-0 |

## No Fee Documents

| | |
|---|---|
| Filing Type | EFile |
| Filing Code | No Fee Documents |
| Motion Code | |

Filing Description            Letter requesting issuance of citations
Reference Number             #976.6 - Rafuse
Comments
Status                       Accepted
Accepted Date                7/1/2020 2:53 PM
**Fees**
Court Fee                    $82.00
Service Fee                  $0.00


Optional Services
Issue Citation               $16.00 (2 x $8.00)
Copies - Non-Certified       $66.00 (66 x $1.00)
**Documents**
*Lead Document*        20200701_Rafuse.pdf          [Original]      [Transmitted]

Case 6:20-cv-00718  Document 1  Filed 08/07/20  Page 30 of 68

<u>Print this page</u>

# Case # 2020-2066-3 - DR HAROLD E RAFUSE VS ADVANCED CONCEPTS AND TECHNOLOGIES INTERNATIONAL LLC ET AL (74TH)

**Case Information**

| | |
|---|---|
| Location | McLennan County - District Clerk |
| Date Filed | 6/30/2020 4:41 PM |
| Case Number | 2020-2066-3 |
| Case Description | DR HAROLD E RAFUSE VS ADVANCED CONCEPTS AND TECHNOLOGIES INTERNATIONAL LLC ET AL |
| Assigned to Judge | 74TH |
| Attorney | Jon Ker |
| Firm Name | Jon R. Ker |
| Filed By | Jon Ker |
| Filer Type | Not Applicable |

**Civil Information**

| | |
|---|---|
| Procedures / Remedies | Declaratory Judgment |
| Damages Sought | Less than $100,000 including damages of any kind |

**Fees**

| | |
|---|---|
| Convenience Fee | $9.77 |
| Total Court Case Fees | $298.00 |
| Total Court Party Fees | $0.00 |
| Total Court Filing Fees | $40.00 |
| Total Court Service Fees | $0.00 |
| Total Filing & Service Fees | $0.00 |
| Total Provider Service Fees | $0.00 |
| Total Provider Tax Fees | $0.00 |
| Total Taxes (for non-court fees) | $0.00 |
| Grand Total | $347.77 |

**Payment**

| | |
|---|---|
| Account Name | Jon R. Ker, P.C. |
| Transaction Amount | $347.77 |
| Transaction Response | Approved |
| Transaction ID | 65475386 |
| Order # | 044164443-0 |



**Petition**

Envelope Details

| | |
|---|---|
| Filing Type | EFile |
| Filing Code | Petition |
| Motion Code | |
| Filing Description | Original Petition for Declaratory Judgment and Request for Disclosures and Request for Production |
| Reference Number | # 976.6 - Rafuse |
| Comments | Please issue citation on Advanced Concepts and Technologies, International, LLC to be served at 1105 Wooded Acres, Ste 500, Waco, Texas; and a citation issued for Michael A. Niggel at 2791 N. Quebec Street, Arlington, VA. Once issued, please notify our office so we can pick them up for our process server |
| Status | Accepted |
| Accepted Date | 7/1/2020 11:13 AM |
| Accept Comments | PLEASE NOTE: ISSUANCE FEES WERE REMOVED FROM THIS FIILNG. THIS OFFICE REQUIRES A REQUEST FOR ISSUANCE FORM OR COVER LETTER REQUESTING ISSUANCE IN ADDITION TO ISSUANCE FEES. |

**Fees**

| | |
|---|---|
| Court Fee | $40.00 |
| Service Fee | $0.00 |

| | |
|---|---|
| Optional Services | |
| Jury Fee | $40.00 |

**Documents**

| | | |
|---|---|---|
| *Lead Document* | 20200630_PLAINTIFF'S ORIGINAL PETITION FOR DECLARATORY JUDGMENT_001.pdf | [Original] [Transmitted] |

**FILED**
**MCLENNAN COUNTY**
**7/1/2020 1:42 PM**
**JON R. GIMBLE**
**DISTRICT CLERK**

Tiffany Crim

# Jon R. Ker, P.C.

Attorney and Counselor at Law
P.O. Box 1087
Hewitt, Texas 76643
(254) 666-1122

Jon R. Ker †
E-Mail: Attorney@jonrkerpc.com
  † Admitted to practice in Texas and Colorado

Physical Address:
400 N. Hewitt Drive
Facsimile: (254) 666-0903

July 1, 2020

**E-FILE**

Office of District Clerk
219 N. 6th, Suite 300
Waco, Texas 76701

  *RE:*   *DR. HAROLD E. RAFUSE vs. ADVANCED CONCEPTS AND*
       *TECHNOLOGIES INTERNATIONAL, LLC ET AL; 2020-2066-3*

Dear Clerk:

Pursuant to your instructions, please issue citations in the referenced matter to be served upon Defendant Advanced Concepts and Technologies, International, LLC at 1105 Wooded Acres, Suite 500, Waco, Texas 76710, and one to be served upon Defendant Michael A. Niggel at 2791 N. Quebec Street, Arlington, Virginia 22207-5212. We ask that once the citations are ready that you notify our office so we may pick them up for our process server.

Yours very truly,

Carolyn Biles
Legal Assistant

**FILED**
**McLENNAN COUNTY**
**6/30/2020 4:41 PM**
**JON R. GIMBLE**
**DISTRICT CLERK**
Tiffany Crim

CAUSE NO. <u>2020-2066-3</u>

| | | |
|---|---|---|
| DR. HAROLD E. RAFUSE | § | IN THE DISTRICT COURT OF |
| | § | |
| VS. | § | |
| | § | |
| ADVANCED CONCEPTS AND | § | McLENNAN COUNTY, TEXAS |
| TECHNOLOGIES, INTERNATIONAL, | § | |
| LLC, AND | § | |
| MICHAEL A. NIGGEL, INDIVIDUALLY | § | <u>74TH</u> JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION FOR DECLARATORY JUDGMENT AND REQUEST FOR DISCLOSURES AND REQUEST FOR PRODUCTION OF DOCUMENTS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Dr. Harold E. Rafuse, Plaintiff, by and through his attorney Jon R. Ker,

P.C., and files his Original Petition for Declaratory Judgment against Defendants, Advanced

Concepts and Technologies, International, LLC (a Virginia LLC), and Michael A. Niggel,

Individually, and for good cause would respectfully would show unto the Court the following:

### I. DISCOVERY CONTROL PLAN

Discovery in this case, if any, is intended to be conducted under Level 2 of Rule 190 of

the TEXAS RULES OF CIVIL PROCEDURE.

### II. PARTIES

Plaintiff, Dr. Harold E. Rafuse, is an individual residing within McLennan County,

Texas.

Defendant, Advanced Concepts and Technologies, International, LLC (hereinafter "ACT

I") is a Virginal Limited Liability Company, but with its principal offices located at 1105

Wooded Acres, Suite 500, Waco, McLennan County, Texas, which may be served with process

---

by serving its registered agent, William N. Ward, at that address.

Defendant, Michael A. Niggel, is an individual residing in the State of Virginia and may be served with process at 2791 N. Quebec Street, Arlington, Virginia 22207-5212.

## III. CLAIM FOR RELIEF

Plaintiff seeks relief not exceeding $100,000 and non-monetary relief.

## IV. JURISDICTION AND VENUE

This Court has jurisdiction over the subject matter and to this suit as the amount in controversy and other relief requested is within the jurisdiction of the Court. Furthermore, each business Defendant has its headquarters in McLennan County, Texas. The acts giving rise to this action occurred or substantially occurred within McLennan County, Texas.

## V. FACTUAL BACKGROUND

Prior to June 30, 2008, Plaintiff owned a fifty percent (50%) membership interest in the Defendant limited liability company. Effective June 30, 2008 the parties entered a Limited Liability Corporation Purchase Agreement And Mutual Release Agreement ("Purchase Agreement" attached as Exhibit "A") wherein Plaintiff sold his 50% membership interest to the "Buyer," therein identified as ACT I, LLC, Aurora Aviation, LLC, Aurora Avionics, LLC, and to Michael A. Niggel. Pursuant to the Purchase Agreement, the purchase price was One Million Seven Hundred Thirty-Six Thousand Nine Hundred Fifty-Three Dollars and 53/100 ($1,736,953.53) payable by an Installment Note bearing interest at 6.0 % per annum over twenty (20) equal quarterly installments of $100,000 each over the five (5) year period starting 30 June 2008 through 31 March 2013.

Effective June 30, 2008 Defendant ACT I executed a Membership Equity Pledge

Agreement Accompanying Equity Purchase and Redemption Agreement and Installment Note

("Pledge Agreement," attached as Exhibit "B"). The Pledge Agreement secured the Installment

Note payable to the Plaintiff. Also accompanying the Purchase Agreement and the Pledge

Agreement was an Indemnity Agreement For Post Closing Events ("Indemnity Agreement,"

attached as Exhibit "C") effective June 30, 2008. Subsequently on May 31, 2011 Plaintiff and

Act I entered an Accord and Satisfaction General Release Agreement ("Accord and Satisfaction,"

attached as Exhibit "D") wherein the Installment Note Agreement was paid in full early by

making an accord of one final payment of $755,978.56 constituting full satisfaction of the

Purchase Agreement, Pledge Agreement and Installment Note.

The Purchase Agreement states in relevant part in paragraph 6 (Indemnity) "There shall

be delivered to Seller an indemnity agreement satisfactory to Seller pursuant to which the Buyer

and Niggel agree to indemnify and hold harmless Seller against any debts, liabilities, obligations

or expenses (including attorney fees) of Buyer or any of its subsidiaries or related companies

occurring after the date of the Closing (30 June 2008)". The Pledge Agreement provides in

relevant part in paragraph 23 (Indemnity) "Buyers and Niggel, jointly and severely, hereby

indemnify and agree to hold Harold E. Rafuse ("Seller") harmless in accordance with the terms

of Section 4.1 of the Operating Agreement now in effect from, against and in respect to any and

all debts, liabilities or obligations of Buyers or any of its subsidiaries or related companies, direct

or indirect, fixed, contingent or otherwise, which arise or are alleged to have arisen after the

closing date or which are based upon as from any act, transaction, circumstance, state of facts or

other condition arising or alleged to have arisen after Closing Date. With respect to any contract

actions resulting in a liability against the company for performance or operating events prior to

closing such as contract adjustments, audit adjustments, finance adjustments contract claims or

tax issues the parties shall each be responsible for fifty percent of the negative financial impact

on the company. For all other preclosing matters, the Seller shall be indemnified." The

Indemnity Agreement for Preclosing Events states in relevant part, "Buyer and Niggel, jointly

and severally, hereby indemnify and agree to hold Harold E. Rafuse (the Seller) harmless from,

against and in respect of (and shall on demand reimburse Seller for): . . . (ii) any and all debts,

liabilities or obligations of Buyers or of any of its subsidiaries or related companies, direct or

indirect, fixed, contingent or otherwise, which are incurred or arise after June 30, 2008 ("the

Effective Date")." Lastly, the Accord And Satisfaction of May 31, 2011 states in relevant part,

Paragraph 4. "The ACT I and Aurora Avionics, LLC hereby releases and forever discharges

Rafuse and his successors and assigns from and against any and all claims, debts, dues, acts,

actions, causes of actions, liabilities, losses suits (sic), fees, (including, but not limited to,

attorney's fees), costs, accounts, bonds, bills, covenants, controversies, agreements, promises,

variances, damages, judgments, executions, claims and demands whatsoever whether known or

unknown, arising in law, equity whatever nature (whether in contract, quasi-contract, tort or

otherwise), which anyone or more of them had or, now has, or may in the future have, by reason

of, arising out of, any matter, right, cause or thing whatsoever existing prior to or as of the

Effective Date with respect to (a) the Limited Liability Equity Purchase Agreement And Mutual

Release Agreement; and (b) the Promissory Note (Exhibit A). This release does not release

Rafuse's responsibility and/or liability for any causes of action, known or unknown, by third

parties unrelated to the Purchase Agreement, including but not limited to any actions, known or

unknown, that may have existed at the time of or prior to the execution of the Purchase

Agreement."  The Accord and Satisfaction further states in relevant part in Paragraph 7, ". . . This Agreement supercedes and replaces all prior negotiations, agreements or proposed agreements, written or oral."

By letter dated June 11, 2020, Defendant ACT I asserted that the Plaintiff owes one-half of a sum totaling $448,238 alleged to have been the result of a DCAA Audit of the CBRN contract conducted after June 30, 2008 without producing any documentation with respect thereto.  By virtue of the documentation and agreements between the parties, Plaintiff is not responsible for any portion of the demand from the Defendants.

## VI.  CAUSE OF ACTION - REQUEST FOR DECLARATORY JUDGMENT

Plaintiff incorporates herein the allegations contained in the Paragraph V. Factual Background.

There is a real and live controversy between Plaintiff and Defendants as to the interpretation of the agreements Exhibits A-D attached.  Plaintiff hereby invokes the Texas Uniform Declaratory Judgment Act (§ 37.00, Texas Civil Practice and Remedies Code) and requests the Court to construe each parties' rights under these documents with respect to the dispute of the parties.   Pursuant to § 37.009 of the Texas Civil Practice and Remedies Code, Plaintiff requests recovery of its costs, reasonable and necessary attorney fees as are equitable and just from the Defendants in this action.

Plaintiff requests a declaratory judgment that Plaintiff is not liable for any sum of money to the Defendants.

## VII.  REQUEST FOR DISCLOSURES

Under Tex.R.Civ.P. 194, Plaintiff requests that Defendants disclose within fifty (50) days

of the service of this request, the information of material described in Rule 194.2 and 190.2(6).

## VIII. REQUEST FOR PRODUCTION

Under Tex.R.Civ.P. 196, Plaintiff requests that Defendants respond to the discovery listed on Exhibit E on the basis of all available information and that Defendants' response to said discovery be served on the undersigned counsel no later than fifty (50) days after receipt of same. Defendants are further advised of their duty to supplement Answers as required by Rule 193, Tex.R.Civ.P.

## IX. DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that the Court issue citation to the Defendants to appear and answer herein and that on final trial, Plaintiff have the following:

1. Declaratory Judgment that Plaintiff does not owe the Defendants any sum of money;

2. Reasonable and necessary attorney fees;

3. Cost of suit;

4. Such other and further relief to which the Plaintiff may show himself to be justly entitled.

Respectfully submitted,

LAW OFFICE OF JON R. KER, P.C.
P. O. Box 1087
Hewitt, Texas 76643
Telephone: (254) 666-1122
Facsimile: (254) 666-0903
Attorney@jonrkerpc.com

BY: _____ /S/ JON R. KER _____
     JON R. KER, Texas Bar No. 11327700
     ATTORNEY FOR PLAINTIFF

# LIMITED LIABILITY CORPORATION
# EQUITY PURCHASE AGREEMENT
# AND
# MUTUAL RELEASE AGREEMENT

THIS L.L.C. EQUITY PURCHASE AGREEMENT AND MUTUAL RELEASE AGREEMENT ("Agreement") is made and entered into as of this 30th day of June, 2008 between, Dr. Harold E. Rafuse, ("Seller"), and Advanced Concepts and Technologies International, L.L.C. (a Virginia L.L.C), Aurora Aviation, LLC and Aurora Avionics, LLC Texas limited liability companies (herein collectively referred to as "ACT I" or "Buyer") and Michael A. Niggel ("Niggel")

## RECITALS:

This Agreement is made with reference to the following facts:

A.    The Seller owns 50% membership interest of Buyer.

B.    Buyer desires to purchase from the Seller said 50% membership interest on the terms and conditions hereinafter provided.

C.    Seller and Buyer desire to mutually terminate the relationship of Seller as co-founder, managing director, officer, and employee of Buyer.

NOW, THEREFORE, IT IS AGREED AS FOLLOWS:

1.    <u>Purchase of Equity</u>.

(a)    <u>Payment at Closing</u>:  The Buyer hereby purchases from Seller and Seller hereby sells to Buyer his 50% membership interest in ACT I, at an aggregate purchase price of $1,736,953.53 payable pursuant to an Installment Note bearing interest at 6.0% per annum over 20 equal quarterly payments of $100,000 each over the 5 year period starting 30 June 2008 thru 31 March 2013, the form of such installment note is attached hereto as **Exhibit A.**  The note will be secured by the membership interest being sold. Buyer and Niggel shall execute a Security Agreement satisfactory to Seller at the closing. In the even of default by the Buyer, the Seller shall be



**EXHIBIT  "A"**

entitled, as part of his security interest, to pursue the Right of the Secured Party as detailed in Membership Equity Pledge Agreement Section 9. If the Secured Party proceeds to have that portion of the Pledged Membership representing the balance of the unpaid obligation computed using a company valuation as described in Section 9.6 of The Operating Agreement, then both parties shall each designate an appraiser to determine the value of the company. The value arrived at by the two appraisers shall be averaged and the value shall be binding upon the parties, provided, however, that if the two appraisals shall vary by more than 20%, such values shall not be averaged and the two appraisers shall jointly designate a third appraiser who shall determine the purchase price and whose determination shall be conclusive. Once the firm has been valued, then that portion of the Collateral needed to satisfy the unpaid balance of the Installment Note will be returned as Membership Interest to the Secured Party.

(b) Contingent Post Closing Consideration and Adjustment:
In the event the Seller's (Rafuse) ACT I, K-1 tax return for the tax year 2008, up to the date of closing, reports more than $81,000 in net income then Buyer shall pay to Seller in additional consideration an amount equivalent to 35% of the increased reportable net income for that period over and above $81,000. Such payment shall be paid no later than April 10, 2009 providing Seller's K-1 has been finalized and if not finalized then Payment, if any, shall be due no later than 30 days after completion of the K-1 and delivery of same to ACT I.

(c) Retirement Contribution and Adjustment:
In the event that ACT I fails for any reason to make its 2007 contribution to the retirement plan, then ACT I shall compensate the Seller in the amount of the adverse tax implications resulting from failing to make any or all of the retirement contribution and the resulting increase in taxable income.

2. Closing. The closing may take place at the offices of Buyer at Waco, Texas on 30th day of June 2008 (the "Closing") or such other time as the parties may mutually agree. At the Closing, Buyer will purchase from the Seller all of his membership interest in the Buyer (i.e., 50% membership interest), and Seller will execute and deliver a bill of sale with respect to such membership interest against delivery by Buyer and Niggel of the note, security agreement referred to above.

2

3.   Representations and Warranties of Seller.  The Seller hereby represents and warrants to Buyer the following:

(a)   Ownership of 50% Membership Interest in ACT I.  The Seller is the sole owner of a 50% membership interest in ACT I free and clear of any claims, liens, trusts, encumbrances or other rights or interests of any persons (other than the restrictions imposed by the ACT I Operating Agreement), and has the absolute and unrestricted right, power, authority and capacity to sell and transfer said membership interest provided herein.

4.   Representations and Warranties of Buyer.  The Buyer hereby makes the following representations and warranties to the Seller:

(a)   Incorporation.  Buyer is a limited liability corporation duly organized, validly existing and in good standing under the laws of the State of Virginia.

(b)   Authority.  Buyer is duly authorized and empowered to enter into, execute and perform this Agreement and there are no restrictions imposed upon Buyer by its Articles of organization, operating agreement or any other agreements, contracts or arrangements to which it is a party which would prohibit or interfere with the full and complete performance by Buyer hereunder.

(c)   No Capital Impairment.  The purchase will not violate the terms of Virginia law.

5.   Conditions to Buyer's Obligation.  The obligation of Buyer to purchase the membership interest hereunder is subject to the fulfillment on or before the Closing of each of the following conditions:

(i)   Compliance With Terms.  At the Closing, all the terms, conditions and agreements herein to be complied with and performed by the Seller on or before the Closing shall be complied with and performed in all material respects, except release of CNB Line of Credit Guarantee which is subject to the final decision of CNB.  The Seller shall execute a certificate to this effect.

6. <u>Conditions to Seller's Obligation</u>. The obligation of Seller to sell the membership interest hereunder is subject to the fulfillment on or before the Closing of each of the following conditions:

(i) <u>Compliance With Terms</u>. At the Closing, all the terms, conditions and agreements herein to be complied with and performed by the Buyer on or before the Closing shall be complied with and performed in all material respects. The Buyer shall execute a certificate to this effect.

(ii) <u>Release of Guaranties</u>. Buyer has re-financed all aircraft loans which carried Seller's guarantee, and thus released Seller of any indebtedness of ACT I or any of its subsidiary or related companies for which Seller had personal liability including, without limitation, the indebtedness to, MBNA America (Delaware), N.A., Cessna Finance Corporation and Bank of America, N.A.;

(iv) <u>Release of CD</u>. Buyer and Seller agree that CNB has agreed to release to Seller of the security interest held by Central National Bank on a certificate of deposit owned by Seller which is pledged to secure ACT I indebtedness;

(v) <u>Indemnity</u>. There shall be delivered to Seller an indemnity agreement satisfactory to Seller pursuant to which the Buyer and Niggel agree to indemnify and hold harmless Seller against any debts, liabilities, obligations or expenses (including attorneys' fees) of Buyer or any of its subsidiary or related companies occurring after the date of the Closing (30 June 2008); and

(vi) <u>Consulting Agreement</u>. Contemporaneously with the closing, Buyer shall enter into a consulting agreement with Seller in a form mutually agreeable to the parties.

(vii) <u>Financial Reporting</u>. Seller shall receive from Buyer monthly financial reports (Income Statements and Balance Sheets) on ACT I and the Aurora companies throughout the life of the installment note.

7. <u>Continuance of Directors' and Officers' coverage</u>. ACT I shall obtain an extended reporting period (otherwise known as "*Tail Coverage*") throughout the life of the installment note under ACT I's existing director's and officer's liability policy.

4

8.   <u>Operating Agreement.</u>   Seller shall withdraw as a member of ACT I and resign all positions with ACT I and its subsidiaries and related companies (Aurora Aviation, L.L.C and Aurora Avionics, L.L.C). Niggel and Seller agree to waive any provisions of the operating agreement of ACT I that may restrict the provisions of this Agreement and the transfer of the 50% membership interest contemplated by this Agreement. The parties shall execute such amendments to the operating agreement as may be necessary to continue operations and effect this sale.

9.   <u>Brokers and Finders</u>.  Each of the parties agrees to indemnify and hold the other free and harmless from any claim for compensation by any other person, firm or corporation claiming to have acted as finder, broker or agent for and on behalf of either party in connection with the subject matter of this Agreement or negotiations leading thereto.

10.   <u>Mutual Release</u>. In further consideration of the payments and performances provided for in this Agreement, Buyer and Niggel, on the one hand, and Seller, on the other hand, each hereby release and discharge the other, their affiliates, officers, directors, employees, parents, subsidiaries, predecessors and successors in interest, agents, representatives, heirs, and assigns, and relinquish any and all past, present or future claims, demands, obligations, or causes of action for, compensatory or punitive damages, costs, losses, expenses, and compensation, whether based on tort, contract, or other theories of recovery, which each may have against the other, or which may later accrue to or be acquired by Buyer or Niggel, on the one hand, or Seller, or Seller on the other hand, arising from the relationship of Seller, Niggel and Buyer as described above; provided that this Mutual Release shall not extend to or affect (i) the obligations of Buyer, Niggel and Seller under this Agreement or the documents executed pursuant hereto, (ii) the obligation to indemnify Seller for acts and omissions as an officer and manager of ACT I that exists under Article X the operating agreement of ACT I as written subsequent to Seller's withdrawal as a member, (iii) any obligations to pay salary, medical benefits or premiums, or pension or profit sharing contributions; (iv) amounts held for the benefit of Seller in any pension, profit sharing, 401k, or similar plans or arrangements; or (v) expense reimbursements for expenses incurred in the ordinary course of business prior to the closing.

11.   <u>Miscellaneous</u>.

(a)   Entire Agreement. This Agreement constitutes the entire understanding between the parties with respect to the subject matter hereof, superseding all negotiations, prior discussions and preliminary agreements. This Agreement may not be changed except in writing executed by the parties hereto.

(b)   Counterparts. This Agreement may be executed in one or more counterparts, and any number of counterparts signed in the aggregate by the Buyer and Seller shall constitute a single original instrument.

(c)   Assignment. This Agreement shall not be assignable by any party without the consent of the other.

(d)   Choice of Law. This Agreement shall be interpreted and enforced in accordance with the law of the State of Virginia.

(e)   Further Assurances. At the request of Buyer and without further consideration, the Seller will execute and deliver any and all additional instruments of transfer and will take other action as Buyer may reasonably request in order to more effectively transfer the Equity.

(f)   Severability. In the event that any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable, the same shall not affect any other provision of this Agreement, but this Agreement shall be construed as if such invalid, illegal or unenforceable provision has never been contained herein.

(g) Nondisparagement.

Seller covenants and agrees that he will not at any time, directly or indirectly, orally, in writing or through any medium intentionally disparage, defame, impugn, or otherwise damage or assail the reputation, integrity or professionalism of Buyer, or any officer, director, employee, agent or representative of Buyer in any way connected with Buyer.

(h)   Nondisclosure and Covenant Not To Compete.   For a period of five years after the date of this Agreement, Seller agrees to refrain

from disclosing Buyer's customer lists, trade secrets, or other confidential material without Buyer's prior written consent. Seller agrees to take reasonable security measures to prevent accidental disclosure and industrial espionage. For a period of five years after the date of this Agreement, Seller agrees not to compete with Buyer (i.e., ACT I, LLC, Aurora Aviation LLC, and Aurora Avionics LLC) in the performance of consulting services for the Federal government that are within the types of services currently being performed by ACT I, and Seller agrees not to compete with Aurora Aviation and Aurora Avionics for the delivery and performance of commercial aviation products and services within the Buyer's market which is defined as the State of Texas without prior written approval from Buyer. For purposes of this covenant not to compete, competition is defined as rendering professional services, soliciting or accepting employment, to or for any person or entity in competition with Buyer as described above, including but not limited to any client, subcontractor or vendor of the Buyer's collective companies.

For a period of five years from the date hereof, Seller agrees not to solicit, attempt to solicit, or accept business from, or cause to be solicited or have business accepted from, any person or entity with whom Buyer has a written contractual relationship (a "Customer") or for whom Buyer has delivered products or services within the last 180 days preceding the date hereof, any persons or entities who were Customers of the Buyer within the 180 days preceding the Closing Date, or any prospective customers of the Buyer for whom terms sheets, letters of agreement, contracts or other transactions were being prepared or had been in discussions as of the Closing Date without Buyer's prior written consent.

For a period of five years from the date hereof, Seller further agrees not to induce, or attempt to induce, hire or attempt to hire, or cause to be induced or hired, any employee of Buyer, or persons who were employees of the Buyer within the 180 days preceding the Closing Date, to leave or terminate their employment with the Buyer, or hire or engage as an independent contractor any such employee of the Buyer without prior written consent from the Buyer.

Notwithstanding the foregoing provisions of this subsection (h), the obligations of the covenant not to compete shall terminate if Buyer defaults on its obligations to pay Seller pursuant to the terms of the installment note executed pursuant hereto.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

> Advanced Concepts and Technologies International, L.L.C. (ACT I), Aurora Aviation, LLC and Aurora Avionics, LLC (Buyer)
>
> By: *Michael Niggel*
>
> Mr. Michael Niggel, Managing Director for Buyer and Member
>
> By: *Harold E. Rafuse*
>
> Dr. Harold E. Rafuse, Seller and Member

8

# MEMBERSHIP EQUITY PLEDGE AGREEMENT ACCOMPANYING EQUITY PURCHASE and REDEMPTION AGREEMENT and INSTALLMENT NOTE

This Membership Equity Pledge Agreement is entered into as of 30 June, 2008 (the "Effective Date"), by and among Dr. HAROLD RAFUSE, an individual residing at 111 Laurel Oaks Lane, Crawford, Texas 76638 (the "Secured Party"), and ADVANCED CONCEPTS and TECHNOLOGIES INTERNATIONAL, LLC, a Virginia LLC, with its Headquarters offices at 1105 Wooded Acres, Suite 500, Waco, Texas 76710 which includes ownership of Aurora Aviation, L.L.C. and Aurora Avionics, L.L.C. both Texas LLCs (herein referred to as "ACT I" and/or the "LLC/Pledgor"), with reference to the following facts.

## Background Statement

WHEREAS, The Secured Party has agreed to sell to LLC/Pledgor and LLC/Pledgor has agreed to purchase and redeem Secured Party's fifty percent (50%) Membership interest in Advanced Concepts and Technologies International Limited Liability Company, the LLC/Pledgor Purchaser, for a total purchase price of $1,736,953.53 (the "Membership Interest"), pursuant to that certain Limited Liability Equity Purchase Agreement and Mutual Release, by and between the Secured Party and LLC/Pledgor, of even date (the "Purchase Agreement").

WHEREAS, In addition the Secured Party has agreed to finance the sale of said membership interest pursuant to the terms of that certain installment promissory note dated of even date herewith in the principal amount of $1,736,953.53, plus interest as provided therein, (the "Note").

WHEREAS, As a material inducement for the Secured Party to finance the sale of said membership interest and to enter into the Purchase Agreement, LLC/Pledgor has agreed to secure its obligations under the Note by granting the Secured party a subordinated security interest in the Membership Interest being sold (i.e., subject to subordination agreements to ACT I's current, and any succeeding, financial institutions).

## Agreement

NOW, THEREFORE, in consideration of the mutual terms, covenants and conditions contained herein, the parties hereby agree as follows:

1. <u>Security</u>. The term "Collateral" shall mean the fifty percent (50%) membership interest being redeemed and acquired by the LLC/Pledgor from the Secured Party, together with all proceeds thereof, dividends or distributions with respect thereto and any instruments representing such membership interest, and all options, warrants, rights, instruments, and other property or proceeds from time to time distributed in respect of or in exchange for any or all of such membership interest. The Collateral may be changed from time to time in accordance with Section 24 below.

**EXHIBIT "B"**

2.    Grant of Security Interest. As security for full and timely payment, performance and satisfaction of the Obligations (as defined in **Section** 4 below), LLC/Pledgor hereby pledges, grants, transfers and assigns to the Secured Party a subordinated security interest in the Collateral.

3.    Perfection of Security Interest; Further Assurances. This Agreement, and the delivery to Secured Party of the membership interests representing Collateral creates a valid, perfected, and subordinate security interest in one hundred percent (100%) of the Collateral in favor of Secured Party securing payment of the Obligations, and all actions necessary to achieve such perfection have been duly taken.

(a)    All certificates or instruments representing or evidencing the Collateral shall be promptly delivered by LLC/Pledgor to Secured Party or Secured Party's designee pursuant hereto at a location designated by Secured Party and shall be held by or on behalf of Secured Party pursuant hereto, and shall be in suitable form for transfer by delivery, or shall be accompanied by duly executed endorsement certificate in a form satisfactory to Secured Party or other instrument of transfer or assignment in blank, in form and substance satisfactory to Secured Party.

(b)    Upon the occurrence and during the continuance of an Event of Default (as defined in **Section** 9 below), Secured Party shall have the right, at any time in its discretion and without notice to LLC/Pledgor, to transfer to or to register on the books of ACT I (or of any other person or entity maintaining records with respect to the Collateral) in the name of Secured Party or any of its nominees any or all of the Collateral.

(c)    If any Collateral (including any certificate or instrument representing or evidencing any Collateral) is in the possession of a person or entity other than Secured Party (a "Holder"), then LLC/Pledgor shall immediately, at Secured Party's option, either cause such Collateral to be delivered into Secured Party's possession, or cause such Holder to enter into a control agreement, in form and substance satisfactory to Secured Party, and take all other steps deemed necessary by Secured Party to perfect the security interest of Secured Party in such Collateral, all pursuant to Sections 9-106 & 9-313 of the Uniform Commercial Code as in effect in the State of Texas (the "Code") from time to time or other applicable law governing the perfection of Secured Party's subordinate security interest in the Collateral in the possession of such Holder.  Once the Secured Party is removed from all personal guarantys then the company shall be appraised on an annual basis and the secured party's secured interest in the membership shall be adjusted to be a ratio between the total appraised value of the company to the outstanding loan amount as per section 1(a) of the Purchase Agreement and any membership certificate in the possession of the Secured Party or Third Party shall be re-issued reflecting the adjusted interest.

(d)    If at any time, and from time to time, any Collateral consists of an uncertificated security or a security in book entry form, then LLC/Pledgor shall immediately cause such Collateral to be registered or entered, as the case may be, in the name of Secured Party, or otherwise cause Secured Party's security interest thereon to be perfected in accordance with applicable law.

2

(e)     The LLC/Pledgor, at its expense, will promptly execute and deliver all further instruments and documents, and take all further action that may be necessary or reasonably desirable, or that Secured Party may request, in order to perfect and protect any security interest granted or purported to be granted hereby or to enable Secured Party to exercise and enforce its rights and remedies hereunder with respect to any Collateral. Without limiting the generality of the foregoing, LLC/Pledgor will: (i) at the request of Secured Party, mark conspicuously each of its records pertaining to the Collateral with a legend, in form and substance reasonably satisfactory to Secured Party, indicating that such Collateral is subject to the subordinate security interest granted hereby; (ii) execute and such instruments or notices, as may be necessary or reasonably desirable, or as Secured Party may request, in order to perfect and preserve the subordinate security interests granted or purported to be granted hereby; (iii) allow inspection of the Collateral by Secured Party or Persons designated by Secured Party; and (iv) appear in and defend any action or proceeding that may affect LLC/Pledgor's title to or Secured Party's security interest in the Collateral.

4.     Obligations of LLC/Pledgor. As used herein, the term "Obligations" shall mean all of LLC/Pledgor's liabilities, obligations, covenants and agreements under the Installment Note and Equity Purchase Agreement.

5.     Voting of Pledged Membership Interest. So long as no Default (as defined in **Section** 9) is in existence, LLC/Pledgor will have sole voting rights with respect to the Pledged Membership Interest and Collateral. Upon the occurrence and during the continuance of an Event of Default, all rights of Pledgor to exercise the voting and other consensual rights or receive and retain cash dividends or distributions that it would otherwise be entitled to exercise or receive and retain concerning the Collateral, as applicable pursuant to this **Section 5**, shall cease, and all such rights related to the Collateral shall thereupon become vested in Secured Party, who shall thereupon have the sole right to exercise such voting or other consensual rights and to receive and retain such cash dividends and distributions related to the Collateral. LLC/Pledgor shall execute and deliver (or cause to be executed and delivered) to Secured Party all such proxies and other instruments as Secured Party may reasonably request for the purpose of enabling Secured Party to exercise the voting and other rights related to the Pledged Membership Interest as Collateral which it is entitled to exercise and to receive the dividends and distributions that it is entitled to receive and retain pursuant to the preceding sentence.

6.     Representations and Warranties of LLC/Pledgor. LLC/Pledgor warrants and represents to the Secured Party that as of closing: (a) it has the power and authority to enter into this Agreement and has the power and authority to pledge the Membership for the purposes described herein, (b) as of closing and subject to the terms of this pledge agreement LLC/Pledgor is the legal and beneficial owner of all of the Collateral, (c) all of the Collateral is owned by LLC/Pledgor free of any other pledge, mortgage, lien or security interest of any kind except the first priority interest of ACT I's current or future financial institutions; (d) the execution and delivery by LLC/Pledgor of this Agreement, and the performance of its terms, will not result in any violation or default under the terms of any agreement or instrument, or any law or governmental rule or regulation applicable to LLC/Pledgor or the Collateral, (e) upon execution by LLC/Pledgor of this Agreement, this Agreement will create a valid and perfected subordinate security interest in the Pledged Membership, subject to the prior primary security interest of

3

ACT I's current and any succeeding financial institutions, and (f) LLC/Pledgor is a Registered Organization under the Code organized under the laws of the State of Virginia.

7.      Covenants of LLC/Pledgor.  The LLC/Pledgor and its member Manager, Michael Niggel, shall have full authority to operate and manage the business of the LLC including the authority to sell, dispose of, exchange, acquire and finance the sale of LLC property and assets without prior approval from the Secured Party (subject to the provisions of **Section** 11 hereof). Notwithstanding the foregoing authority, the LLC and its Member Manager shall not, without prior approval from the Secured Party, (i) authorize distribution to the remaining member in an amount exceeding Five Hundred Thousand Dollars ($500,000) in any 12 month period and (ii) on and after the occurrence of an Event of Default, authorize the distribution to the remaining member of any further amounts.

8.      Financing Statement.  Pledgor hereby authorizes Secured Party to file one or more financing or continuation statements, and amendments thereto, relative to all or any part of the Collateral. A carbon, photographic, or other reproduction of this Agreement or any financing statement covering the Collateral or any part thereof shall be sufficient as a financing statement where permitted by law.

9.      Events of Default.  Each of the following shall be deemed an "Event of Default," the occurrence of which shall, at the option of Secured Party, cause all sums owing to the Secured Party under the Note forthwith to become due and payable on demand, without presentment, protest, notice of acceleration or intent to accelerate, or other notice of any kind, all of which are hereby expressly waived (except as specifically provided in **Section 10** hereof):

        (a)     Failure to pay any installment of principal or interest on the Note, or any renewals thereof, as the same shall become due and payable, as therein or herein expressed, whether at maturity, by declaration as authorized in the Note or by this Agreement, or otherwise;

        (b)     LLC/Pledgor shall  refuse or fail to observe or perform in any material respect any other of the covenants, warranties, representations, conditions and agreements contained in this Agreement or the Purchase Agreement;

        (c)     LLC/Pledgor shall have had an order for relief entered against it under the Bankruptcy Reform Act of 1978 (the "Code"), or a trustee or receiver shall be appointed for LLC/Pledgor of all or a substantial part of any of its property in any involuntary proceeding under the Code or otherwise, or any court shall have taken jurisdiction of all or a substantial part of any of its property in any involuntary proceeding for the reorganization, dissolution, liquidation or winding up of LLC/Pledgor, and such trustee or receiver shall not be discharged or such jurisdiction relinquished or vacated or stayed on appeal within thirty (30) days; or an involuntary petition for relief under the Code which is filed against LLC/Pledgor or any guarantor of the obligations under the Note has not been dismissed within thirty (30) days from the date of its filing; or LLC/Pledgor or any guarantor of the obligations under the Purchase Agreement or Note shall become insolvent or shall admit in writing its inability to pay its debts generally as they become due, or shall generally not be paying its debts as such debts become due, or shall consent to the appointment of a receiver or trustee or liquidator all of its property or a substantial part thereof, or shall have failed within thirty (30) days to pay or bond or otherwise

4

discharge any judgment or any attachment of a material item of property which is unstayed on appeal;

(d) The breach of, or the occurrence of any default or event of default under, the Purchase Agreement or any of the documents executed pursuant thereto.

10.     Opportunity to Cure.     Notwithstanding any other provisions in this Pledge Agreement, the LLC/Pledgor shall have the right to receive fifteen (15) days written notice of a default condition during which time the LLC/Pledgor shall an the opportunity to cure such default. Should such condition continue for a period of fifteen (15) days after the opportunity to cure then the Secured Party may proceed to it rights under this agreement.

11.     **Remedies upon Default.**

Upon the occurrence and during the continuance of an Event of Default:

(a)     Secured Party may exercise in respect of the Collateral, in addition to other rights and remedies provided for herein or otherwise available to it, all the rights and remedies of a secured party on default under the Code (irrespective of whether the Code applies to the affected items of Collateral), and Secured Party may also without notice (except as specified below) sell the Collateral or any part thereof in one or more parcels at public or private sale, at any exchange, broker's board or at any of Secured Party's offices or elsewhere, for cash, on credit or for future delivery, at such time or times and at such price or prices and upon such other terms as Secured Party may deem commercially reasonable, irrespective of the impact of any such sales on the market price of the Collateral. To the maximum extent permitted by applicable law, Secured Party may be the purchaser of any or all of the Collateral at any such sale and shall be entitled, for the purpose of bidding and making settlement or payment of the purchase price for all or any portion of the Collateral sold at any such public sale, to use and apply all or any part of the Obligations as a credit on account of the purchase price of any Collateral payable at such sale. Each purchaser at any such sale shall hold the property sold absolutely free from any claim or right on the part of LLC/Pledgor, and LLC/Pledgor hereby waives (to the extent permitted by law) all rights of redemption, stay, or appraisal that it now has or may at any time in the future have under any rule of law or statute now existing or hereafter enacted. LLC/Pledgor agrees that, to the extent notice of sale shall be required by law, at least ten (10) calendar days notice to LLC/Pledgor of the time and place of any public sale or the time after which a private sale is to be made shall constitute reasonable notification. Secured Party shall not be obligated to make any sale of Collateral regardless of notice of sale having been given. Secured Party may adjourn any public or private sale from time to time by announcement at the time and place fixed therefore, and such sale may, without further notice, be made at the time and place to which it was so adjourned.

(b)     Rafuse Guaranty and Remedies upon Default: So long as the Seller's (Rafuse) personal guaranty is in effect guaranteeing loan obligations owed by the company ACT I and/or Aurora Aviation (the company), and such guaranty constitutes an enforceable legal obligation against Seller then, upon default by ACT I or Aurora on the underlying loan and notice of such default by the lender and a failure to cure by the company or Purchaser then, in addition to any other remedies he may have, Seller, after due notice and a failure to cure by

5

consistent with the terms of the purchase agreement, shall be entitled to retain his fifty percent (50%) equity ownership position in the companies until such time as the underlying loans are satisfied or he is no longer a personal guarantor. Any time Seller is removed as a personal guarantor of Act I and Aurora loans then Secured Party's interest in the Membership interest shall be adjusted as per section 3(c) of the Security Agreement and Section 1(a) of the Purchase Agreement. The balance of the purchase agreement terms shall remain.

(c)     If Secured Party shall determine to exercise its right to sell all or any portion of the Collateral pursuant to this **Section**, LLC/Pledgor agrees that, upon request of Secured Party, LLC/Pledgor will, at its own expense up to a maximum limitation of $10,000:

(i)     execute and deliver, or cause the officers and directors of the Issuers to execute and deliver, to any person, entity or governmental authority as Secured Party may choose, any and all documents and writings which, in Secured Party's reasonable judgment, may be necessary or appropriate for approval, or be required by, any regulatory authority located in any city, county, state or country where LLC/Pledgor or ACT I engages in business, in order to transfer or to more effectively transfer the Collateral or otherwise enforce Secured Party's rights hereunder; and

(ii)     do or cause to be done all such other acts and things as may be necessary to make such sale of the Collateral or any part thereof valid and binding and in compliance with applicable law.

(iii) LLC/Pledgor will appoint a Third Party as LLC/Pledgor's attorney-in-fact who is not an attorney advising on this transaction, with full authority in the place and stead of LLC/Pledgor and in the name of LLC/Pledgor, from time to time, to take any action and to execute any instrument that may reasonably be deemed necessary or advisable to accomplish the purposes of this Agreement, including: (i) upon the occurrence and during the continuance of an Event of Default, to receive, indorse, and collect all instruments made payable to LLC/Pledgor representing any dividend, interest payment or other distribution in respect of the Collateral or any part thereof to the extent permitted hereunder and to give full discharge for the same and to execute and file governmental notifications and reporting forms; (ii) to enter into any control agreements deemed necessary pursuant to this Agreement; or (iii) to arrange for the transfer of the Collateral on the books of LLC/Pledgor or any other person or entity to the name of Secured Party or to the name of Secured Party's nominee.

(e)     Secured Party shall have no obligation to foreclose on the Collateral, but may in his sole discretion proceed to enforce collection of the Obligations and to exercise any other remedies available to him at law or in equity.

(f).     Substitute Membership. If Secured Party forecloses upon all or any part of the Collateral, (i) LLC/Pledgor consents to Secured Party, or any other purchaser of the Collateral at a foreclosure, becoming a substitute partner or member, as the case may be, in the LLC/Pledgor which issued the Collateral that was foreclosed upon subject to the substitute member qualifying for a security clearance satisfactory to continue the work of the LLC/Pledgor and (ii) agrees that Secured Party, or any other purchaser of the Collateral, shall be entitled to

6

elect a manager to represent the Secured Party's, or any other purchaser of the Collateral's, membership interest.

(g) <u>Proceeds</u>. The proceeds of any disposition of all or any part of the Pledged Membership/Collateral, as provided above, will be applied as follows: (a) first, to the primary secured interests of ACT I financial institutions, (b) second to the costs and expenses incurred in connection therewith or incidental thereto, including the Secured Party's reasonable attorneys' fees and legal expenses ; (c) third, to the satisfaction subordinated secured interests of the Obligations; (c) fourth, to the payment of any other amounts required by applicable law; and (d) fifth, to LLC/Pledgor to the extent of any surplus remaining.

(h) <u>Private Sale</u>. LLC/Pledgor recognizes and acknowledges that the Secured Party may be unable to effect a public sale of all or a part of the Collateral and may elect to resort to one or more private sales to purchasers who will be obligated to agree, among other things, to acquire the Collateral for their own account, for investment, and not with a view to the distribution or resale thereof. LLC/Pledgor acknowledges that any such private sales may be at prices and on terms less favorable than those of public sales, and agrees that such private sales will be deemed to have been made in a commercially reasonable manner.

12. <u>Performance by LLC/Pledgor</u>. Upon full payment and performance of all of the Obligations by LLC/Pledgor and upon payment of costs and expenses provided herein which are limited to a maximum of $10,000, this Agreement will terminate, and the Secured Party or his third party designee will deliver or caused to be delivered to LLC/Pledgor, such of the Pledged Membership Interest/Collateral that has not been sold or otherwise disposed of pursuant to this Agreement.

13. <u>Legend</u>. As long as the Membership Interest is subject to this Agreement, such Interest shall bear the following legend:

THE MEMBERSHIP INTEREST REPRESENTED HEREBY IS SUBJECT TO THAT CERTAIN MEMBERSHIP INTEREST PLEDGE AGREEMENT, DATED 30 JUNE, 2008 BY AND BETWEEN ADVANCED CONCEPTS AND TECHNOLOGIES INTERNATIONAL, LLC  and HAROLD RAFUSE AND MAY NOT BE ASSIGNED, SOLD OR TRANSFERRED EXCEPT AS PROVIDED THEREIN.

14. <u>Successors and Assigns</u>. This Agreement is binding upon and will inure to the benefit of the parties hereto, and their successors and assigns.

15. <u>Amendments; etc</u>. No amendment or waiver of any provision of this Agreement nor consent to any departure by LLC/Pledgor herefrom shall in any event be effective unless the same shall be in writing and signed by Secured Party, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given. No failure on the part of Secured Party to exercise, and no delay in exercising any right under this Agreement, any other Credit Document, or otherwise with respect to any of the Secured Obligations, shall operate as a waiver thereof; nor shall any single or partial exercise of any right under this Agreement, any other Credit Document, or otherwise with respect to any of the Secured

7

Obligations preclude any other or further exercise thereof or the exercise of any other right. The remedies provided for in this Agreement or otherwise with respect to any of the Secured Obligations are cumulative and not exclusive of any remedies provided by law.

16. <u>Governing Law</u>. THE VALIDITY OF THIS AGREEMENT, ITS CONSTRUCTION, INTERPRETATION, AND ENFORCEMENT, AND THE RIGHTS OF THE PARTIES HERETO SHALL BE DETERMINED UNDER, GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF VIRGINIA.

17. <u>Notices</u>. All notices, consents, waivers, and other communications under this Agreement must be in writing and will be deemed to have been duly given when (a) delivered by hand (with written confirmation of receipt), (b) sent by facsimile or electronic mail (with written or electronic confirmation of receipt), provided that a copy is mailed by registered mail, return receipt requested or (c) when received by the addressee, if sent by a nationally recognized overnight delivery service (receipt requested), in each case to the appropriate addresses and facsimile numbers set forth below (or to such other addresses and facsimile numbers as a party may designate by notice to the other parties):

If to the LLC/Pledgor:

Advanced Concepts and Technologies International, LLC
1105 Wooded Acres, Suite 500
Waco, Texas 76710
Fax No: (254) 776-3813
Attn: Michael Niggel

With a copy to:

William Barton
Barton Baker McMahon & Tolle, LLP
1320 Old Chain Bridge Road, Suite 440
Mclean, VA 22101
Fax No. (703) 448-3336
Attn: William Barton

If to Secured Party:

Dr. Harold E. Rafuse
111 Laurel Oaks Lane
Crawford, Texas 76638
Fax No. (254)

With a Copy to:

Beard, Kultgen, Brophy, Bostwick & Dickson, LLP
Central Tower
5400 Bosque Blvd., Suite 301

8

Waco, Texas 76710
Fax No. (254) 776-3591
Attn: Rick Brophy

18.     Entire Agreement. This Agreement and any other agreement expressly referred to herein supersedes any and all other agreements, either oral or in writing, among the parties hereto, with respect to the subject matter hereof and contains all of the covenants and agreements among the parties with respect to the subject matter hereof.

19.     Waiver; Modification. No term or condition of this Agreement will be deemed to have been waived nor will there by any estoppel to enforce any provision of this Agreement except by written instrument of the party charged with such waiver or estoppel. No amendment or modification of this Agreement will be deemed effective unless and until executed in writing by all of the parties hereto.

20.     Severability. All agreements and covenants contained herein are severable and in the event that any of them will be held to be invalid by any court of competent jurisdiction, this Agreement will be interpreted as if such invalid agreements or covenants were not contained herein.

21.     Delay; Time of Essence. No failure or delay by a party in exercising any right, power, or privilege hereunder will operate as a waiver thereof, and no single or partial exercise thereof will preclude any other or further exercise or the exercise of any other right, power, or privilege. Time is of the essence of each and every provision of this Agreement of which time is an element.

22.     Attorneys' Fees. LLC/Pledgor agrees to pay and reimburse Secured Party upon demand for all reasonable costs and expenses (including reasonable attorneys' fees and expenses) that Secured Party may only incur after substantiation of default in connection with (i) the custody, use or preservation of, or the sale of, collection from or other realization upon, any of the Collateral, including the reasonable expenses of re-taking, holding, preparing for sale or lease, selling or otherwise disposing of or realizing on the Collateral, (ii) the exercise or enforcement of any rights or remedies granted hereunder, under the Purchase Agreement, or under any of the other documents executed pursuant to the Purchase Agreement or otherwise available to it (whether at law, in equity or otherwise), or (iii) the failure by LLC/Pledgor to perform or observe any of the provisions hereof. The provisions of this Section shall survive the execution and delivery of this Agreement until the Installment Note is retired.

23.     Indemnity  Buyers and Niggel, jointly and severally, hereby indemnify and agree to hold Harold E. Rafuse (the "Seller") harmless in accordance with the terms of Section 4.1 of the Operating Agreement now in effect from, against and in respect any and all debts, liabilities or obligations of Buyers or any if its subsidiaries or related companies, direct or indirect, fixed, contingent or otherwise, which arise or are alleged to have arisen after the closing date or which are based upon or arise from any act, transaction, circumstance, state of facts or other condition arising or alleged to have arisen after the Closing Date.  With respect to any contract actions resulting in a liability against the company for performance or operating events occurring prior to closing such as contract adjustments, audit adjustments, finance adjustments, contract claims or

9

tax issues the parties shall each be responsible for fifty percent of the negative financial impact on the company. For all other pre-closing matters the Seller shall be indemnified.

24. <u>New Membership</u>. The LLC/Pledgor may take on new members in accordance with the LLC's Operating Agreement. In the event that the LLC/Pledgor accepts a new member(s), any capital cash contribution made by the new member(s) would be applied as follows: 50% of the cash contribution would go towards the last payment, or payments, or as a paydown of the remaining principal, on the Seller's Installment Note (but never to exceed the outstanding amount on the Installment Note), and the remaining 50% cash would go to the LLC/Pledgor. At the time of taking on a new member(s), and after the application of all cash contributions, and any and all non-cash assets made as contributions for membership, the LLC/Pledgor and Seller would re-calculate the percent of equity required for the Collateral pledged to the Seller to equal the outstanding balance on the Seller's Installment Note (but never to exceed 50% of the LLC).

IN WITNESS WHEREOF, the parties have executed this Membership Interest Pledge Agreement effective as of the date first written above.

LLC/Pledgor

Advance Concepts and Technologies International, LLC

By: _____
     Manager

Secured Party:

Dr. Harold Rafuse

10

## INDEMNITY AGREEMENT FOR POST CLOSING EVENTS

This Indemnity Agreement is executed and delivered by Advanced Concepts and Technologies International, L.L.C., Aurora Aviation, LLC, and Aurora Avionics, LLC (collectively, the "Buyers") and Michael Niggel ("Niggel") as of June 30, 2008, pursuant to Section 6(iv) of that certain Limited Liability Corporation Equity Purchase Agreement and Mutual Release Agreement dated as of June 30, 2008 (the "Purchase Agreement").

Buyers and Niggel, jointly and severally, hereby indemnify and agree to hold Harold E. Rafuse (the "Seller") harmless from, against and in respect of (and shall on demand reimburse Seller for):

(i) any and all loss, liability or damage suffered or incurred by Seller by reason of any untrue representation, breach of warranty or nonfulfillment of any covenant by Buyers or Niggel contained in the Purchase Agreement or in any certificate, document or instrument delivered to Seller pursuant thereto or in connection therewith;

(ii) any and all debts, liabilities or obligations of Buyers or any if its subsidiaries or related companies, direct or indirect, fixed, contingent or otherwise, which are incurred or arise after June 30, 2008 (the "Effective Date") ; and

(iii) any and all successful actions, suits, proceedings, claims, demands, assessments, judgments, costs and expenses, including, without limitation, legal fees and expenses, incident to any of the foregoing or incurred in investigating or attempting to avoid the same or to oppose the imposition thereof, or in enforcing this indemnity.

IN WITNESS WHEREOF, this Indemnity Agreement is executed and delivered as of the date first above written.

### BUYERS

ADVANCED CONCEPTS & TECHNOLOGIES INTERNATIONAL, L.L.C.

By: _Michael Niggel_
Michael Niggel, Managing Director

AURORA AVIATION, LLC
By: _Michael Niggel_
Michael Niggel, Managing Director

AURORA AVIONICS, LLC
By: _Michael Niggel_
Michael Niggel, Managing Director

NIGGEL
_Michael Niggel_
Michael Niggel

## EXHIBIT "C"

## ACCORD AND SATISFACTION AND GENERAL RELEASE

THIS ACCORD AND SATISFACTION AND GENERAL RELEASE (this "**Agreement**") is entered into as of the Effective Date of May 31, 2011 by and among (i) Advanced Concepts and Technologies International, LLC ("**ACT I**"); and (ii) Dr. Harold Rafuse ("**Rafuse**"); collectively referred to as the "**Parties**" and sometimes individually referred to as a "**Party**".

WHEREAS, ACT I and Rafuse are parties to a "Limited Liability Equity Purchase Agreement and Mutual Release Agreement" dated on or about June 30, 2008 (the "**Purchase Agreement**") whereby ACT I purchased Rafuse's equity interest in ACT 1 and Aurora Avionics, LLC pursuant to the terms of the Purchase Agreement;

WHEREAS, pursuant to the terms of the Purchase Agreement and a Promissory Note ("**Note**") which is an Exhibit thereto, ACT I was to pay Rafuse certain sums of money pursuant to installments defined in the Note;

WHEREAS, ACT I desires to make final payment to Rafuse in full and complete satisfaction of its obligations under the Purchase Agreement and Note;

NOW, THEREFORE, for and in consideration of the foregoing, the Parties agree as follows:

1.      This Agreement will become effective as of the date the final signature is applied to the Agreement ("**Effective Date**").

2.      ACT I hereby submits a final payment to Rafuse in the amount of $755,978.56 by good check representing $748,473.32 of principal and $7,505.24 in interest this amount representing all amounts still due to Rafuse by ACT I under the Purchase Agreement and Note and constituting full satisfaction thereof.

3.      Rafuse hereby releases and forever discharges ACT I and Aurora Avionics, LLC and each of their respective successors and assigns from and against any and all claims, demands, debts, dues, damages, rights, actions, causes of actions, liabilities, losses, suits, fees (including, but not limited to, attorney's fees), costs, accounts, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, damages, judgments, executions, claims and demands whatsoever, whether known or unknown, arising in law or in equity, of whatever nature (whether in contract, quasi-contract, tort or otherwise) which he ever had or now has or may in the future have, by reason of, arising out of, related to, or in connection with, any matter, right, cause or thing whatsoever, existing prior to or as of the Effective Date with respect to (a) the Limited Liability Equity Purchase Agreement and Mutual Release Agreement; and (b) the Promissory Note attached thereto as Exhibit A.

4.      The ACT I and Aurora Avionics, LLC hereby release and forever discharge Rafuse and his successors and assigns from and against any and all claims, demands, debts, dues, damages, rights, actions, causes of actions, liabilities, losses suits, fees (including, but not limited to,

**EXHIBIT    " D "**

attorney's fees), costs, accounts, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, damages, judgments, executions, claims and demands whatsoever whether known or unknown, arising in law or in equity, of whatever nature (whether in contract, quasi-contract, tort or otherwise) which any one or more of them had or, now has, or may in the future have, by reason of, arising out of, related to, or in connection with, any matter, right, cause or thing whatsoever, existing prior to or as of the Effective Date with respect to (a) the Limited Liability Equity Purchase Agreement and Mutual Release Agreement; and (b) the Promissory Note attached thereto as Exhibit A.   This Release does not release Rafuse's responsibility and or liability for any causes of action, known or unknown, by third parties unrelated to the Purchase Agreement, including but not limited to any actions, known or unknown, that may have existed at the time of or prior to the execution of the Purchase Agreement.

5.      Rafuse, hereby confirms his resignation as a Member and/or Manager of Advanced Concepts and Technologies International, LLC and Aurora Avionics, LLC.

6.      The Parties shall keep confidential the provisions of this Agreement, except that disclosure may be made (a) to legal counsel and/or to a tax or accounting professional; (b) to any Managers, officers and/or consultants of ACT I and Aurora Avionics, LLC ; (c) to the Internal Revenue Service or any state or other taxing authority if required in connection with an audit of any income tax return; (d) to enforce any term or provision of this Agreement; or (e) to comply with any subpoena or judicial order.

7.      This Agreement constitutes and contains the final accord and satisfaction among the Parties and the final satisfaction of all payment obligations under the Agreement and Note and the Parties entered this Agreement in reliance upon the promises and covenants contained herein. This Agreement supersedes and replaces all prior negotiations, agreements or proposed agreements, written or oral.   Each Party acknowledges that any promise, representation or warranty whatsoever, express or implied, written or oral, which is not contained herein is not binding nor has induced the Party to execute this Agreement, and each Party acknowledges that it has not executed this Agreement in reliance on any promise, representation or warranty not contained herein. This Agreement is final and may only be modified by written amendment signed by all Parties to this Agreement.

8.      This Agreement may be executed in more than one counterpart, each of which shall be deemed an original and all of which together shall constitute one and the same document.

9.      The Parties shall execute such further assurances as may be necessary or required.

10.     This Agreement shall be governed by the substantive laws of the Commonwealth of Virginia, United States of America, without regard to its conflict of laws provisions.

**[End of Text]**

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the day and year indicated below.

Date: _____ 18 July 2011 _____

_____
Advanced Concepts and Technologies
International, LLC and Aurora Avionics,
LLC
By: Mike Niggel
Title: Manager

Date: _____ 31 May 2011 _____

_____
Dr. Harold Rafuse

- 3 -

## PLAINTIFF'S REQUESTS FOR PRODUCTION

### Instructions for Request for Production

All information responsive to this request that is not privileged and that is in your possession, custody, or control is to be produced.

*"Possession, custody, or control"* of an item means that the person either has physical possession of the item or has a right to possession of the item that is equal or superior to that of the person who has physical possession of the item.

If any of this information is solely in electronic or magnetic form, you must produce this information by providing Plaintiff with this information on computer disks formatted for IMB-compatible computers with a notation identifying the computer program (including version identification) necessary to access the information.

In responding to the following discovery you must furnish such information as is available to you, not merely such information as is of your own personal knowledge. This request includes the knowledge of your agents, representatives, and your attorney, unless privileged.

If any of the following discovery cannot be answered in full, please answer to the extent possible and state specifically any and all reasons for your inability to answer the remainder, describing the specific efforts by you or anyone on your behalf to ascertain the information sought. If any information called for by this discovery is withheld on the grounds that the information sought is privileged, constitutes attorney work product or trial preparation materials, or for any other reason is exempt from discovery, set forth the ground or grounds for withholding the information explaining which type of information is being withheld, and furnish such other information as may be required to enable the Court to adjudicate the propriety of the refusal to furnish the information.

### Definitions

(1)     *You* and/or *Defendant* shall refer to each respective Defendant, as the case may be, and any and all of their present or former employees, partners, owners, agents, representatives, parent companies, subsidiaries, affiliates and any person who acted for or on behalf of the responding Defendant or at its direction and control.

(2)     The term *Plaintiff* refers to Harold E. Rafuse.

(3)     The terms *Document, Documents* or *Documentation* as used in these requests shall mean and include the original and a copy of the original and any non-identical copy, regardless of location of the original, or any recorded, printed, written, typed or other graphic material of any kind, variety, type and character, including by way of example, but not limited to the following: books, records, contracts, agreements, invoices, orders, bills, certificates, deeds, bills of sale, certificates of title, financing statements, instruments, expenses accounts, canceled checks, bank statements, bank books, receipts and disbursement journals, tax returns, financial statements, check stubs, promissory notes, resumes, medical records, address books, appointment books or telephone logs, work sheets, pictures, photographs, photographic negatives, income statements, profit and loss statements, balance statements, deposit slip(s), credit card receipts, records or

## EXHIBIT __"E"____

notations of telephone or personal conversations, conferences, inter-office communications, letters, telexes, partnership agreements, articles of incorporation, catalogue price lists, sound stage and video records, memoranda (including written memoranda of telephone conversations, or other conversations, discussions, agreements, acts, and activities), video recordings, audio recordings, minutes, manuals, diaries, calendars or desk pads, scrap books, notebooks, correspondence, emails, notes, memoranda, bulletins, circulars, policies, forms, pamphlets, notices, statements, journals, postcards, letters, telegrams, reports, inter-office communications, photostats, blueprints and other data, information or statistics contained within any data storage modules, tapes, disks or other memory devices (including IBM or similar cards for information, data and programs), information retrievable on storage systems (including computer generated reports and printouts), and information stored on any computer or computer system, including without limitation information stored on computer hard drives, CD Roms, CDs, DVDs, floppy discs or any other electronic data storage device. If any requested documentation was, but is not longer in your possession or subject to your control, state what disposition was made of the document, and if the document is still in existence, identify the person who has possession or control of the document. This definition of *Document, Documents* and *Documentation* should be construed as broadly as reasonably possible and is intended to encompass any type of written, printed or typed material, whether stored or kept in paper form, on microfilm, on any computer or electronic media or any type of tape or disk or in any other manner.

      (4)     The term *any* shall mean both *any* and *all*.

      (5)     The term *all* shall mean both *all* and *any*.

      (6)     The term *and* shall mean both *and* and *or*.

      (7)     The term *or* shall mean both *or* and *and*.

      (8)     *Identify* or *identity* when used in connection with an entity means to provide the name, address and telephone number of the entity, and provide the name of any and all persons affiliated with the entity who have knowledge of the matters to which the particular request pertains.

      (9)     *Identify* or *identity* when used in connection with a person means to provide the person's full name, title, employer, home and business address, home and business telephone number, email address and fax number.

      (10)    *Supplementation.* To the extent certain requests have been previously responded to, and the responses at the time they were given were incorrect or incomplete or since then have become inaccurate or incomplete, it is requested that the prior responses be supplemented.

## **DOCUMENTATION TO BE PRODUCED**

1.  Legible copy of the entire CBRN Contract W56HZV-05C0670 (hereinafter referred to as "the CBRN Contract), including but not limited to Statement of Work (SOW), deliverables, contract schedule for deliverables and required status reviews.

2.  Legible copies of all amendments and changes to the CBRN Contract.

3.  Resumes or curriculum vitaes and all other documents of credentials of all ACT I staff who worked on and charged direct or indirect labor to the CBRN Contract.

4.  Legible copies of all contracts and consultant agreements awarded and managed by ACT I in support of the CBRN Contract.

5.  Resumes, curriculum vitaes and other documents of credentials of all subcontractor staff and consultants who performed work on and charged direct or indirect labor to the CBRN Contract.

6.  Legible copies of all time cards for ACT I employees, subcontractor(s), and consultant(s) who charged time to the CBRN Contract for all contract performance periods.

7.  Legible copies of all invoices submitted by subcontractor(s) and consultant(s) to ACT I for direct labor and all indirect costs reimbursement for work in support of the CBRN Contract.

8.  Documents reflecting the basis and values of all ACT I indirect costs, including but not limited to fringe, overhead, G&A and fees, applied for each year of the CBRN Contract performance periods.

9.  Legible copies of all invoices and supporting documentation submitted by ACT I to the government under the CBRN Contract.

10. Legible copies of all documents reflecting claims for indirect costs, including but not limited to materials, travel, equipment acquired, facility costs and modifications, and supplies, incurred respecting the CBRN Contract for each year of contract performance.

11. Legible copies of all documents related to all CBRN Contract reviews with government clients, including but not limited to dates, locations, agendas, attendees and all memoranda for the record on the outcomes of each review conducted for all contract performance periods.

12. Legible copies of all documentation used for contract status reviews with the government client for all contract performance periods.

13.　　Legible copies of all documents reflecting government client communications to ACT I following CBRN Contract performance reviews and other meetings throughout the contract performance periods.

14.　　Legible copies of all CBRN Contract deliverables provided to the governmental client.

15.　　Legible copies of all documents related to establishing the basis and amounts of all indirect costs proposed each year of the CBRN Contract to be used as provisional charging rates on CBRN Contract invoices.

16.　　Legible copies of all documents related to the DCAA approval for the use of provisional indirect rates applied to each year of the CBRN Contract performance.

17.　　Legible copies of all correspondence, whether in hard copy or electronic means, including but not limited to all discussion notes, memoranda for the record, and all other communications between ACT I, representatives of ACT I, and DCAA auditors related to the CBRN Contract Audit.

18.　　Legible copies of all documentation from DCAA for the disallowance of direct and/or indirect charges for each year of the CBRN Contract performance periods.

19.　　Legible copies of all documentation respecting the disposition of all government funded and owned equipment and supplies at the termination of the CBRN Contract period.

20.　　The names, physical addresses, email addresses, telephone numbers and fax transmission numbers for all DCAA personnel involved in the conduct and outcome of the CBRN Contract audit.

21.　　Legible copy of the complete audit performed by DCAA of the CBRN Contract.

22.　　Legible copies of all communications, whether hard copy or by electronic means, between ACT I and its agents, subcontractors and consultants and the government client or government auditors concerning, related to, or challenging the DCAA Audit of the CBRN Contract.

23.　　Legible copies of all communications, whether hard copy of by electronic means, between ACT I, its employees, agents, subcontractors and consultants concerning or related to the DCAA Audit of the CBRN Contract.

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **DR. HAROLD E. RAFUSE,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **ADVANCED CONCEPTS AND** | § | _____ |
| **TECHNOLOGIES, INTERNATIONAL,** | § | |
| **LLC and MICHAEL A. NIGGEL,** | § | |
| | § | |
| *Defendants*. | § | |

## DECLARATION OF MICHAEL A. NIGGEL

| | |
|---|---|
| STATE OF VIRGINIA | § |
| | § |
| ARLINGTON COUNTY | § |

1.     My name is Michael A. Niggel.  I am over 18 years of age, of sound mind, and am capable of making this declaration. The facts stated in this declaration are within my personal knowledge and are true and correct to the best of my knowledge.

2.     I make this declaration in support of Defendant Advanced Concepts and Technologies, International, LLC's ("Defendant" or "ACT I") Notice of Removal in the above-referenced case.

3.     I have been a member of ACT I since its inception. I am currently the sole member of ACT I and have been the sole member since Dr. Rafuse sold his membership interests in ACT I in 2008.

4.     ACT I is a Virginia limited liability company with its principal place of business located at 200 12th Street South, Suite 1101, Arlington, Virginia 22202.

I certify under penalty of perjury under the laws of the United States that the information contained herein is true and correct.

Executed in Arlington County, State of Virginia, on July 31st, 2020.

Michael A. Niggel