**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

|  |  |
|---|---|
| **DR. HAROLD E. RAFUSE,**<br>**Plaintiff,**<br><br>*v.*<br><br>**ADVANCED CONCEPTS AND**<br>**TECHNOLOGIES INTERNATIONAL,**<br>**LLC and MICHAEL A. NIGGEL,**<br>**Defendants.** | **6:20-cv-00718-ADA** |

## MEMORANDUM OPINION & ORDER

Came on for consideration this date is Defendants Advanced Concepts and Technologies International LLC ("ACT I") and Michael A. Niggel's Motion to Dismiss, ECF No. 11; Plaintiff Harold E. Rafuse's Motion for Judgment on the Pleadings or, in the alternative, Motion for Summary Judgment, ECF No. 21; Defendants' Cross-Motion for Summary Judgment, ECF No. 32-1; and Plaintiff's Motion to Strike the Niggel Declaration, ECF No. 34.

## I. INTRODUCTION

This case centers around a contract dispute between Rafuse, Niggel, and ACT I. At issue are several agreements, signed over the course of years, how they interact, subjecting their signatories to and discharging them from obligations related to equity in ACT I. The Court concludes that Rafuse is entitled to judgment on Defendants' counterclaims of breach, declaratory judgment, and attorneys' fees.

## II. BACKGROUND

### A.    Factual History

Rafuse and Niggel co-founded ACT I, a limited liability company specializing in providing "total acquisition management services to, among other clients, federal government agencies such

as the Department of Defense and the Department of Homeland Security." ECF No. 32-1 at 3. Rafuse was a co-founder, managing director, officer, and employee of ACT I. Through a series of interrelated agreements entered into on June 30, 2008, Rafuse divested himself of his 50% membership interest in ACT I.

On June 30, 2008, the following agreements were entered into:

- The Limited Liability Corporation Equity Purchase Agreement and Mutual Release Agreement (the "Purchase Agreement") between Rafuse, ACT I, and Niggel, in which Rafuse transferred his 50% ownership interest in ACT I to ACT I for money and other consideration. ECF No. 26-1.

- The Membership Equity Pledge Agreement Accompanying Equity Purchase and Redemption Agreement and Installment Note (the "Pledge Agreement"), explicitly referred to in the Purchase Agreement, between Rafuse and ACT I, in which ACT I agreed to secure its obligation under a promissory note granting Rafuse a subordinated security interest in the 50% ownership interest he was transferring to ACT I. ECF No. 26-3.

- The Installment Note (the "Note") in which ACT I promised to pay Rafuse $2 million. The Note identified the relevant collateral as the equity in ACT I Rafuse was selling to ACT I through the Purchase Agreement and Pledge Agreement. ECF No. 26-2.

- The Indemnity Agreement for Post-Closing Events (the "Indemnity Agreement"), explicitly referred to in the Purchase Agreement, between ACT I and Niggel, agreeing to indemnify and hold Rafuse harmless for certain events occurring after closing. ECF No. 26-4.

Three years later, ACT I paid all amounts owed to Rafuse under the Purchase Agreement and Note, as reflected in a May 31, 2011 agreement entitled Accord and Satisfaction and General Release (the "Accord and Satisfaction") between ACT I and Rafuse. ECF No. 26-5. The Accord and Satisfaction also included broad, mutual releases and a merger provision.

Years after the Accord and Satisfaction was executed, the federal government completed an audit of ACT I's rates for the period from 2005–2008 (the "Audit"). "The purposes of these rate audits . . . was to validate rate build-ups, resulting in final settled rates for each year, apply these settle[d] rates to affected contracts in those years and reconcile all payments made to ACT I during the contract period." ECF No. 26 ¶18. According to Defendants, "[t]he federal government initially took the position that ACT I owed a total refund of $2,065,091 for the 2005-2008 contract period." ECF No. 26 ¶ 19. Ultimately, ACT I received an offer to settle the Audit for $448,238 (the "Audit Settlement") on or before June 30, 2020. *Id.* On June 11, 2020, Defendants sent Rafuse a letter requesting he pay half the Audit Settlement. Rafuse refused. ECF No. 26 ¶¶ 20, 21. ACT I paid the federal government the Audit Settlement, ECF No. 26 ¶ 22, and now requests that this Court determine that Rafuse owes ACT I half the Audit Settlement pursuant to the June 2008 agreements.

### B.    Procedural History

Rafuse filed a Petition in the 74th Judicial District Court of McLennan County, Texas, seeking declaratory judgment that he did not owe Defendants any money. On August 3, 2020, Defendants ACT I and Niggel filed an Original Answer, Affirmative Defenses, and Counterclaims and subsequently removed the case to this Court. *See* ECF No. 1. Defendants original answer asserted a failure to state a claim as an affirmative defense and counterclaimed for: (1) breach of the Pledge Agreement, (2) a declaration that Plaintiff owes Defendants half of the Audit Settlement pursuant to the Pledge Agreement, and (3) attorneys' fees under § 38.001 of the Texas Civil Practice and Remedies Code.

On August 21, 2020, Plaintiff filed an answer to Defendants' answer and counterclaims, asserting three affirmative defenses: accord and satisfaction, estoppel, and release. ECF No. 9 at 4. That same day, Plaintiff filed an Amended Complaint seeking a declaratory judgment that "Plaintiff is not obligated to pay the Defendant ACT I any sum of money and, in the alternative, if Plaintiff be obligated to pay Defendant ACT I any sum of money, Plaintiff is entitled to indemnity from the Defendant Niggel." ECF No. 10 at 5. The Amended Complaint also sought a full and complete accounting and disclosure of the audit, negotiations, and settlement with the federal government. *Id*.

On September 3, 2020, Defendants responded to Plaintiff's amended complaint with a Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, seeking dismissal of Plaintiff's declaratory judgment claim and accounting claim. *See* ECF No. 11. Plaintiff responded on September 15, 2020, ECF No. 12, to which Defendants replied on September 21, 2020, ECF No. 13. On January 15, 2020, Magistrate Judge Jeffrey Manske issued a Report and Recommendation granting-in-part and denying-in-part Defendants' Motion to Dismiss. ECF No. 17 (the "Report"). The Report recommended two judgments. First, that Plaintiff's accounting claim be dismissed because Plaintiff failed to plead the requisite fiduciary relationship between Plaintiff and ACT I. *Id*. at 7. And second, that Plaintiff's declaratory judgment claim as to Plaintiff's liability to ACT I be dismissed as redundant of ACT I's affirmative counterclaims related to Plaintiff's alleged breach. *Id*. at 5–6. Judge Manske recommended denying the Motion to Dismiss with respect to Plaintiff's alternative declaratory judgment request concerning Niggel's obligation to indemnify Plaintiff for any financial obligation to ACT I. *Id*.

Plaintiff and Defendants objected to the Report on January 28, 2021. *See* ECF Nos. 20, 22. Plaintiff only objected to the dismissal of his declaratory judgment claim, ECF No. 20, and

Defendants responded on February 4, 2021, ECF No. 24. Defendants objected to the Report, requesting clarification that when the Report recited that, under the Accord and Satisfaction, "the parties agreed constituted a full satisfaction of the Purchase Agreement, Pledge Agreement, and Installment Note," the Report was merely characterizing Plaintiff's position. ECF No. 22 at 2. Defendants also argued that the Report did not address Defendants' argument that Plaintiff's declaratory judgment claim against Niggel turns on an interpretation of the relevant agreements that is "unreasonable as a matter of law." *Id*. at 4.

The same day it filed its objections, Plaintiff moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure or, in the alternative, summary judgment under Rule 56 of the Federal Rules of Civil Procedure, seeking a judgment in its favor on all claims. ECF No. 21. On April 9, 2021, Defendants responded to that motion and cross-moved for summary judgment in its favor on all claims. On May 5, 2021, the Court granted leave for the parties to file the following: a substituted version of Defendants' response and cross-motion, including a declaration from Niggel (the "Niggel Declaration"), ECF No. 32-1; Plaintiff's reply to the substituted version and a motion to strike the Niggel Declaration, ECF No. 34; Defendants' response to that motion to strike, ECF No. 35; and Plaintiff's reply in support of its motion to strike, ECF No. 36.

### III. LEGAL STANDARD

#### A.     Report & Recommendation

A party may file specific, written objections to the proposed findings and recommendations of the magistrate judge within fourteen days after being served with a copy of the report and recommendation, thereby securing *de novo* review by the district court. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b). A district court need not consider "[f]rivolous, conclusive, or general objections." *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987) (quoting *Nettles v. Wainwright*,

677 F.2d 404, 410 n.8 (5th Cir. 1982) (en banc), *overruled on other grounds by Douglass v. United States Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996)).

### B.       Breach of Contract

Virginia law requires three elements to establish a breach of contract claim: "(1) 'a legal obligation of a defendant to the plaintiff,' (2) 'a violation or breach of that right or duty,' and (3) 'a consequential injury or damage to the plaintiff.'" *Little v. Quin Rivers, Inc.*, No. 3:15-CV-20, 2015 U.S. Dist. LEXIS 91434, 2015 WL 4363201, at *1 (E.D. Va. July 14, 2015) (quoting *Westminster Investing Corp. v. Lamps Unlimited, Inc.*, 237 Va. 543, 546, 379 S.E.2d 316, 5 Va. Law Rep. 2268 (1989)); *see also Sunrise Continuing Care, LLC v. Wright*, 277 Va. 148, 671 S.E.2d 132, 135 (Va. 2009).

### C.       Motion to Dismiss for Failure to State a Claim

Upon a motion to dismiss for failure to state a claim, a court may dismiss an action that fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court accepts all well-pleaded facts as true, viewing them in the light most favorable to the non-movant. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). To survive a motion to dismiss, a non-movant must plead enough facts to state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court determines whether the plaintiff has stated both a legally cognizable and plausible claim; the court should not evaluate the plaintiff's likelihood of success. *Lone Star Fund V. (U.S.), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). Based upon the assumption that all the allegations in the complaint are true, the factual allegations must be enough to raise a right to relief above the speculative level. *See Twombly*, 550 U.S. at 555. A court, however, need not blindly accept each and every allegation of fact; properly pleaded allegations of fact amount to more than just conclusory allegations or legal conclusions

masquerading as factual conclusions. *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *see also Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

When the non-movant pleads factual content that allows the court to reasonably infer that the movant is liable for the alleged misconduct, then the claim is plausible on its face. *Iqbal*, 556 at 678. The plausibility standard, unlike the "probability requirement," requires more than a sheer possibility that a defendant acted unlawfully. *Id*. A pleading offering "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. Additionally, a complaint does not meet the standard if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*. at 557. Evaluating the plausibility of a claim is a context specific process that requires a court to draw on its experience and common sense. *Iqbal*, 556 U.S. at 679.

### D.  Motion for Judgment on the Pleading

The Court uses the Federal Rules of Civil Procedure and federal pleading standards to test a complaint. *See Fonseca v. Allstate Vehicle & Prop. Ins. Co.*, No. 7:20-cv-358, 2020 U.S. Dist. LEXIS 239251, 2020 WL 7497018, at *4 & nn.64, 66 (S.D. Tex. Dec. 21, 2020) (Alvarez, J.); *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp.*, 818 F.3d 193, 201 (5th Cir. 2016). Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed." "[F]or purposes of 12(c), 'the pleadings are closed upon the filing of a complaint and an answer (absent a court-ordered reply), unless a counterclaim, crossclaim, or third-party claim is interposed.'" *Mandujano v. City of Pharr*, 786 F. App'x 434, 436 (5th Cir. 2019) (per curiam). A Rule 12(c) motion is analyzed under the Rule 12(b)(6) standard. *See Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 209 (5th Cir. 2009). "[T]he inquiry focuses on the allegations in the pleadings and not on whether the plaintiff actually has sufficient evidence to succeed on the merits." *Id*.

### E.       Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality, the substantive law will identify which facts are material" and facts are "material" only if they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Disputes over material facts qualify as "genuine" within the meaning of Rule 56 when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Given the required existence of a genuine dispute of material fact, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id*. at 247–48. A claim lacks a genuine dispute for trial when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

### IV. ANALYSIS

### A.       The Court Adopts Judge Manske's Report

The parties filed objections to the Report on January 28, 2021. *See* ECF Nos. 20, 22. The Court has conducted a *de novo* review of the motion to dismiss, the responses, the Report, the objections to it and any responses thereto, and the applicable laws. After that thorough review, the Court is persuaded that Judge Manske's findings and recommendation should be adopted, with one exception. The Court sustains Defendants' objection to the Report's recitation that "the parties agreed [the Accord and Satisfaction] constituted a full satisfaction of the Purchase Agreement, Pledge Agreement, and Installment Note." ECF No. 22 at 2. While the Report misstated that the

*Defendants* agree with Plaintiff as to that legal conclusion, *this Court* agrees with Plaintiff, as explained below.

### B.    The Court Resolves the Cross-Motions for Judgment Under Rule 12(c)

The Court can resolve all relevant issues here under Rule 12(c). "[F]or purposes of 12(c), 'the pleadings are closed upon the filing of a complaint and an answer (absent a court-ordered reply), unless a counterclaim, crossclaim, or third-party claim is interposed.'" *Mandujano v. City of Pharr*, 786 F. App'x 434, 436 (5th Cir. 2019) (quoting 5C Charles Alan Wright et al., Federal Practice and Procedure § 1367 (3d ed. Apr. 2019 Update)). The Court finds that Defendants' failure to answer Plaintiff's amended complaint will not prevent the Court from ruling under Rule 12(c) as to Defendants' counterclaims. *Cf. Tibarom NV, Inc. v. Shell Oil Prods. U.S.*, No. 3:08-cv-00060-BES-VPC, 2008 U.S. Dist. LEXIS 141000, at *5 (D. Nev. Sep. 24, 2008) (finding a Rule 12(c) motion timely as to claims in a complaint even though the plaintiff had not answered the defendant's counterclaims). The Court is satisfied that pleadings have closed as to Defendants' counterclaims: Defendants included their counterclaims in their answer in state court and Plaintiff answered those counterclaims in this Court. *See* ECF No. 9. Accordingly, the Court sees little prejudice to either side in rendering judgment on those counterclaims, especially where neither raised this procedural issue.

Furthermore, the parties are not separated by any factual disputes. There is no dispute as to the identity of the documents relevant to Defendants' counterclaims. *See* Section II.A, *supra*. The relevant pleadings reference these documents. Defendants original answer, for example, references the Accord and Satisfaction and rely on it to establish its declaratory judgment claim. There is no dispute as to when the relevant agreements were executed. As far as the Court can tell, there is not any dispute as to the relevant timing of the events of the Audit. The parties only dispute how to

interpret the relevant agreements. Accordingly, the Court finds that Defendants' counterclaims and Plaintiff's defenses thereto are ready for resolution as a matter of law under Rule 12(c).[1]

### C.  Virginia Law Governs Interpretation of the Relevant Contracts

"Because this is a diversity case, the forum state of Texas provides the law that governs [the Court's] choice-of-law analysis." *See Cardoni v. Prosperity Bank*, 805 F.3d 573, 580 (5th Cir. 2015) (quoting *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941)). Texas courts will generally enforce choice of law clauses in the contracts-at-issue. *See Fagan Holdings, Inc. v. Thinkware, Inc.*, 750 F. Supp. 2d 820, 824–25 (S.D. Tex. 2010). The parties agree that interpretation of the Purchase Agreement, the Pledge Agreement, and the Accord and Satisfaction are, by their terms, governed by Virginia law. *See, e.g.*, ECF No. 11 ¶ 30; ECF No. 32-1 ¶ 32. The Court applies Virginia law to interpret these agreements and determine if a breach occurred.

Under Virginia law, courts will uphold the intent of the contracting parties as expressed through contractual language. *See Foothill Cap. Corp. v. E. Coast Bldg. Supply Corp.*, 259 B.R. 840, 844 (E.D. Va. 2001). Where the "parties' intent is clear and contractual language amenable to only one reasonable interpretation, courts are to construe contractual language according to its plain and ordinary meaning." *Id*. When interpreting contracts based on their "plain language," courts "cannot read into contracts language which will add to or take away from the meaning of the words already contained therein," and "no word or provision can be rendered meaningless

---

[1] To the extent Defendants contend the Court cannot consider the Accord and Satisfaction pursuant to the procedural limitations of Rule 12(c), the Court would otherwise consider it under Rule 56 to reach the same ultimate conclusion. *See Mendoza-Gomez, Plaintiff—Appellant v. Union Pac. R.R.*, No. 21-20397, 2022 U.S. App. LEXIS 10132, at *9 (5th Cir. Apr. 14, 2022) (affirming summary judgment as to the plaintiff's affirmative defense of release).

when a reasonable interpretation exists that gives effect to and is consistent with all parts of the contract." *Id*. at 844–45.

D.    **Rafuse Accepted Obligations in the Pledge Agreement**

In the Pledge Agreement, Rafuse accepted fifty percent financial responsibility for certain conduct the Court determines would include the Audit. Specifically, Section 23 of the Pledge Agreement provides:

> With respect to any contract actions resulting in a liability against [ACT I] for performance or operating events occurring prior to closing such as contract adjustments, audit adjustments, finance adjustments, contract claims or tax issues the parties shall each be responsible for fifty percent of the negative financial impact on the company. For all other pre-closing matters [Rafuse] shall be indemnified.

Section 23 (the "Obligation Provision"). By the Obligation Provision's terms, the Audit falls within it because the Audit is a "contract action[] resulting in a liability against [ACT I] for performance or operating events occurring prior to closing." The Audit concerns rates ACT I set for federal contracts in the 2005–2008 time period, at least a portion of which occurred prior to the June 30, 2008 closing. Those federal contracts, or at least a portion of them, constitute "operating events occurring prior to closing." And the Audit itself is a "contract action[]" that has resulted in a liability—the Audit Settlement—against ACT I for those "operating events occurring prior to closing." Indeed, it could either be considered a "contract adjustment[]" or an "audit adjustment[]," which Section 23 indicates are types of contract actions. On this issue, the Court agrees with Defendants. *See* ECF No. 32-1 at 12–15.

The Court determines, however, that the Accord and Satisfaction terminated (or discharged) the Obligation Provision (along with the rest of the Pledge Agreement) and so Rafuse bears no responsibility for the Audit Settlement.

### E.     The Accord and Satisfaction Terminated the Obligation Provision

The Accord and Satisfaction includes a merger provision, reading:

> This Agreement constitutes and contains the final accord and satisfaction among the Parties and the final satisfaction of all payment obligations under the Agreement and Note and the Parties entered this Agreement in reliance upon the promises and covenants contained herein. This Agreement supercedes and replaces all prior negotiations, agreements or proposed agreements, written or oral. Each Party acknowledges that any promise, representation or warranty whatsoever, express or implied, written or oral, which is not contained herein is not binding . . . .

ECF No. 26-5, Section 7 (the "Merger Provision"). Plaintiff characterizes this provision as a "clear and unambiguous intention" to anoint the Accord and Satisfaction the sole surviving agreement between Plaintiff and ACT I. ECF No. 21 ¶ 27.d. The terms of the previous agreements, therefore, no longer control. *Id*. Defendants respond that, because the Merger Provision only mentions the Purchase Agreement and the Note, the Accord and Satisfaction meant to supersede only those documents—not the Pledge Agreement. ECF No. 32-1 at 16–17.

The Merger Provision is not as limited as Defendants would have this Court believe. Before it reaches the Merger Provision, the Court addresses those of Defendants' arguments attempting to put distance between the Pledge Agreement on the one hand and the Note and Purchase Agreement on the other. This argument ignores how tightly wound the former was to the latter. Each agreement referred to and interacted with the other. Critically, the Pledge Agreement states that it terminates "[u]pon full payment and performance of all of the Obligations by [ACT I] and upon payment of costs and expenses provided herein." ECF No. 26-3, Section 12. By "Obligations," the Pledge Agreement referred to "all of [ACT I's] liabilities, obligations, covenants and agreements under the [Note] and [Purchase Agreement]." *Id*. at Section 4. In executing the Accord and Satisfaction, ACT I satisfied all its Obligations and, according to Section

12 of the Pledge Agreement, *terminated* the Pledge Agreement and the Obligation Provision along with it.

The Merger Provision's "accord and satisfaction" clause and the "supercedes and replaces" clause are broad and confirm the parties' intention to discharge all prior agreements between Rafuse and ACT I, including the Pledge Agreement. *See* ECF No. 21 at 9. The Merger Provision states that the Accord and Satisfaction "constitutes and contains the final accord and satisfaction among the Parties." An accord and satisfaction "is a method of discharging a contract or cause of action, whereby the parties agree to give and accept something in settlement of the claim or demand of the one against the other, and perform such agreement, the 'accord' being the agreement, and the 'satisfaction' its execution or performance." *Virginia-Carolina Elec. Works v. Cooper*, 192 Va. 78, 63 S.E.2d 717 (1951); *McLain Plumbing & Elec. Serv. v. United States*, 30 Fed. Cl. 70, 79 (1993) ("Consequently, upon the completion of an accord and satisfaction, discharge results to terminate the previous rights or obligations, or in some cases, the previous contract in whole."). In stating that the Accord and Satisfaction was the "final accord and satisfaction among the Parties," the Court finds that ACT I and Rafuse intended to discharge all prior agreements and concomitant obligations between them and did so through satisfying the obligations listed in the Accord and Satisfaction—like ACT I submitting final payment to Rafuse for all amounts still owed. ECF No. 26-5, Section 2. The Merger Provision does not limit "the final accord and satisfaction among the Parties" to the Purchase Agreement and Note—it does not limit it at all. The next clause states that the Accord and Satisfaction also constitutes and contains "the final satisfaction of all payment obligations under the Agreement and Note." But that clause is joined with the previous clause by the conjunction, "and"; it does not undo or narrow the previous clause.

The Merger Provision's recitation that the Accord and Satisfaction "supercedes and replaces all prior negotiations, agreements or proposed agreements, written or oral" confirms that the parties intended the Accord and Satisfaction to replace all prior agreements between them. That clause is not limited to "negotiations, agreements or proposed agreements" concerning or relevant to the subject matter of the Purchase Agreement and Note; like the "final accord and satisfaction" language, it is unbounded. Accordingly, "the merger clause is broad enough to extinguish obligations set forth in all prior agreements"—not just the Purchase Agreement and Note. *Nw. Bldg. Components, Inc. v. Adams*, No. 22-cv-00790-CMA-KLM, 2022 U.S. Dist. LEXIS 94910, at *12 (D. Colo. May 26, 2022) (interpreting an agreement, including a broad merger clause providing that "this Agreement supersedes any and all prior oral or written promises or agreements between the Parties"). "Based on the plain language of the [Accord and Satisfaction], the merger clause explicitly superseded all prior written agreements." *Id*. at *13 (citing *Young v. Element Brand Holdings, LLC*, 20-cv-1953-SAL-TER, 2021 U.S. Dist. LEXIS 75150, 2021 WL 1431206, at *6 (D.S.C. Feb. 2, 2021), *R&R adopted*, No. 20-cv-1953-SAL, 2021 U.S. Dist. LEXIS 57010, 2021 WL 1138023 (D.S.C. Mar. 25, 2021) (collecting cases and noting certain explicit language in merger clauses will clearly extinguish prior contracts)). Virginia courts have recognized that the term "supercedes" "by its plain meaning represents a replacement of prior contracts." *Union Ins. Co. v. Coverage Inc.*, No. L214911, 2004 Va. Cir. LEXIS 23, at *5 (Cir. Ct. Feb. 9, 2004).

To be sure, this merger or integration language may effectively terminate former agreements as of the effective date of the Accord and Satisfaction, but it alone cannot release the parties from breach claims "arising prior to the execution of a new agreement." *Homestar Prop. Sols. v. VRM Mortg. Servs.*, No. 14-03100 (MJD/FLN), 2015 U.S. Dist. LEXIS 31802, at *9–10

14

(D. Minn. Mar. 16, 2015) (applying Texas law) (citing *Coffman v. Provost Umphrey Law Firm, LLP*, 161 F. Supp. 2d 720, 729 (E.D. Tex. 2001)); *see also Premier Corp. v. Econ. Research Analysts, Inc.*, 578 F.2d 551, 554 (4th Cir. 1978) (applying North Carolina law to hold that "[t]he expiration of the brokerage contract in 1972 did not discharge the broker's obligation to indemnify Premier for the loss arising from illegal sales made while the contract was in effect"). This principle is borne out in *Union Ins. Co. v. Coverage Inc.*, No. L214911, 2004 Va. Cir. LEXIS 23 (Va. Cir. Ct. Feb. 9, 2004).

In *Union*, the defendant, Coverage Inc., and the plaintiff, Union Insurance Company, entered into an Agency Agreement ("the 1996 Agreement") under which Coverage would act as Union's agent to solicit and execute insurance contracts on Union's behalf. *Id*. at *1. The 1996 Agreement purportedly required Coverage to pay all premiums owed to Union from policies sold by Coverage. *Id*. On May 15, 1999, the parties executed a Limited Agency Agreement ("the 1999 Agreement"), including a merger clause providing that the 1999 Agreement "supercedes any and all previous agreements." *Id*. at *2.

After execution of the 1999 Agreement, Union apparently conducted an audit showing that, while the 1996 Agreement was in place, premiums of $34,626.35 (the "Unpaid Amount") accrued to Coverage but were not paid to Union in violation of the 1996 Agreement. *Id*. Union then sued to recover the Unpaid Amount. *Id*. Coverage responded that, per the merger clause in the 1999 Agreement, the 1999 Agreement is the exclusive agreement between the parties and the 1996 Agreement is no longer valid, so Coverage owed no money pursuant to the 1996 Agreement. *Id*.

The *Union* court refused to hold that the term "supersedes" in the merger clause "not only means that all previous agreements are replaced by the 1999 Agreement from that point forward but that it also means that all debts owed under prior contracts are nullified by the 1999

Agreement." *Id*. at \*6. "Absent explicit terms regarding the release of prior contractual obligations, this Court cannot extend [the 1999 Agreement's] scope as requested by Coverage." *Id*. at \*7. The *Union* court concluded that "the 1999 Agreement does not preclude claims by Union for premiums accrued during the effective life of the 1996 Agreement." *Id*. "[T]he terms of the 1999 Agreement are clear and unambiguous, and do not release Coverage from its obligation to compensate Union for any outstanding balance due under the 1996 Agreement." *Id*.

Unlike in *Union*, Defendants' claim did not arise or accrue until after the Accord and Satisfaction terminated the Pledge Agreement. As in *Union*, there are two sets of agreements, the later including a broad merger clause effectively terminating the earlier. But, in *Union*, to the extent any breach occurred, it occurred *during the life of the 1996 Agreement*, when Coverage failed to pay Union on premiums. Here, Defendants are not alleging that Rafuse breached the Pledge Agreement during its life. Instead, Defendants' theorize that Rafuse breached well after the Accord and Satisfaction by refusing to pay for half of a liability, the Audit Settlement, that only emerged well after the Accord and Satisfaction terminated the Pledge Agreement. *See* ECF No. 32-1 ¶ 39 ("Defendants' Counterclaim also contains the allegation that Dr. Rafuse breached the Pledge Agreement by *refusing to pay his portion of the Audit Settlement* contrary to the Audit Indemnity Obligation in the Pledge Agreement." (emphasis added)); *cf. Jackson v. Quantrex Integrated Tech. Grp.*, 57 Va. Cir. 368, 373 (Cir. Ct. 2002) ("If the act which the indemnitor bound himself to do was to pay or discharge a debt, and he fails to do so, a right of action accrues at once to the indemnitee to recover the amount of the debt, without regard to the question of whether or not the indemnitee has paid it.") (quoting *Oriental Lumber Co. v. Blades Lumber Co.*, 103 Va. 730, 737–38, 50 S.E. 270, 272 (1905)). In general, a party may be liable for breaches that occurred after a contract was terminated, but the Court is not prepared to conclude that a contractual provision,

once terminated, can be breached.[2] The Court holds that Rafuse could not have breached the Obligation Provision after the Accord and Satisfaction discharged the Pledge Agreement.

### F.      The Release Did Not Preserve the Obligation Provision

Defendants counter, however, that the Accord and Satisfaction did not discharge the Obligation Provision because the Accord and Satisfaction included a mutual release meant to preserve the Obligation Provision or at least Rafuse's future obligations thereunder. The Accord and Satisfaction included a section in which ACT I released and "forever discharge[d]" Rafuse from:

> any and all claims, demands, debts, dues, damages, rights, actions, causes of actions, liability, losses suits, fees (including, but not limited to, attorney's fees), costs, account, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, damages, judgments, executions, claims and demands whatsoever whether known or unknown, arising in law or in equity, of whatever nature (whether in contract, quasi-contract, tort or otherwise) which any one or more of them had or, now has, or may in the future have, by reason of, arising out of related to, or in connection with, any matter, right, cause or thing whatsoever, existing prior to or as of the Effective Date with respect to (a) the [Purchase Agreement]; and (b) the [Note] . . . .

ECF No. 26-5, Section 4 (the "Release"). The Release was punctuated by a carve out, providing:

> This Release does not release Rafuse's responsibility and or liability for any causes of action, known or unknown, by third parties unrelated to the Purchase Agreement, including but not limited to any actions, known or unknown, that may have existed at the time of or prior to the execution of the Purchase Agreement.

*Id*. (the "Carve Out"). "[A] release is an immediate relinquishment or discharge of the covenantor's right of action." *Shortt v. Hudson Supply & Equip. Co.*, 191 Va. 306, 310, 60 S.E.2d 900 (1950). "Like the terms of any contract, the scope and meaning of a release agreement ordinarily is

---

[2] To that point, Plaintiff was unable to find a case that "provides a suit for breach of a terminated contract when the alleged breach did not occur prior to the contract termination." ECF No. 28 ¶ 5.

governed by the intention of the parties as expressed in the document they have executed." *Berczek v. Erie Ins. Grp.*, 259 Va. 795, 799, 529 S.E.2d 89, 91 (2000) (citing *Richfood, Inc. v. Jennings*, 255 Va. 588, 591, 499 S.E.2d 272, 275 (1998)).

In the Court's judgment, the Carve Out does not represent an intention to "preserve," ECF No. 33 ¶ 1, the Obligation Provision from termination for a few reasons. A release relinquishes or discharges a right of action; a carve out therefrom is, therefore, not an affirmative act preserving or saving a contractual provision from the effects of a merger (or accord and satisfaction) provision. If the parties meant for the Obligation Provision to survive the Accord and Satisfaction, they could have been more explicit. For example, the Carve Out could have referenced the Obligation Provision by name or section number. More appropriately, the Merger Provision could have included a carve out identifying the Obligation Provision. Or the Obligation Provision could have included a survival clause. *See* ECF No. 21 at 9–10. After all, the parties included just such a clause in the portion of the Pledge Agreement dedicated to attorneys' fees. *See* ECF No. 26-3, Section 22. And here is the critical point. The parties' failed to save the Obligation Provision from termination and the Accord and Satisfaction does not express an intent to bind Rafuse to phantom obligations—obligations that would have arisen from the Obligation Provision if the Accord and Satisfaction had not terminated it.

Defendants object further, arguing that the Carve Out must be referencing a pre-existing responsibility or liability, which could only be indemnity obligations under the Obligation Provision. ECF No. 33 ¶ 6. This argument sidesteps the aforementioned critical point. Moreover, the plain language of the Carve Out does not signal to the Court that it *must* be referencing obligations under the Obligation Provision. Which is to say, the Carve Out is not, on its face,

superfluous or surplusage in view of a Merger Provision discharging contractual duties.[3] (Nor is it ambiguous.) For all the Court knows, the Carve Out could be referring to non-contract claims, like common-law or statutory claims, that ACT I may have or have had against Rafuse in connection with those third-party claims the Carve Out references. *See also Lancia Jeep v. Chrysler Group Int'l*, No. 2014-142918-CZ, 2015 Mich. Cir. LEXIS 170, *4 (Mich. Cir. Ct. Sept. 11, 2015) (holding that a carve out in a release could not save claims barred by an integration clause).

For the foregoing reasons, the Court concludes that Defendants have not sufficiently alleged "a violation or breach" of a right or duty Rafuse owed ACT I relevant to the Audit in view of the Accord and Satisfaction incorporated in the pleadings. Rafuse is entitled to judgment on the pleadings as to Defendants' counterclaims because Defendants were not able to sufficiently allege plausible claims for breach of contract and declaratory relief. Or, alternatively, judgment on the pleadings is appropriate as to Plaintiff's accord and satisfaction defense.[4]

### G.    The Court Has Not Resorted to Parol Evidence

The parties spilled much ink over objections directed to the Niggel Declaration, primarily regarding its status as parol evidence. *See* ECF Nos. 34, 35, 36. Much of that Declaration included statements that could be considered parol evidence. The Court will not strike or otherwise disturb

---

[3] "No word or clause is to be treated as meaningless if any reasonable meaning consistent with the other parts of the contract can be given to it." *Sweely Holdings, LLC v. R SunTrust Bank*, 296 Va. 367, 381 n.10, 820 S.E.2d 596, 604 (2018).

[4] "Although dismissal under Rule 12[(c)] is ordinarily determined by whether the facts alleged in the complaint, if true, give rise to a cause of action, a claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings." *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986); *see also White v. Padgett*, 475 F.2d 79, 82 (5th Cir. 1973) (holding that claim is "subject to dismissal under Rule 12(b)(6) . . . when [an] affirmative defense clearly appears on the face of the complaint.").

the Niggel Declaration, but, according to the parol evidence rule, the Court will not consider Niggel (or Rafuse's) testimony when interpreting the contracts-at-issue.

A court sitting in diversity is bound to apply the parol evidence rule in the same manner as the underlying state court. *See Jack H. Brown & Co., Inc. vs. Toys R Us, Inc.*, 906 F.2d 169, 173 (5th Cir. 1990) ("We are bound in this diversity case to apply the parol evidence rule as a Texas court would."). Texas law only permits consideration of parol evidence if a contract is ambiguous. *David J Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008). The question of whether an agreement is ambiguous is a question of law, and we may conclude an agreement is ambiguous even if the parties do not plead ambiguity or argue the agreement contains an ambiguity. *See Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983). A writing or term is not ambiguous because it lacks clarity or the parties offer different interpretations. *DeWitt Cnty. Elec. Coop, Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999). No relevant terms are ambiguous and so the Court has not considered parol evidence, like the cited testimony from Niggel and Rafuse.[5]

### H.    Attorneys' Fees

Rafuse requests attorneys' fees pursuant to paragraph 6(v.) of the Equity Purchase Agreement, the Indemnity Agreement for Post Closing Events; and Sections 37.009 and 38.001 of the Texas Civil Practice and Remedies Code. ECF No. 21 ¶ 39. Defendants respond that Plaintiff is not entitled to fees under Section 38.001, ECF No. 32-1 ¶ 72, and the Court agrees with their reasoning. As to all other grounds, the Court requests supplemental briefing on Plaintiff's entitlement to attorneys' fees. Plaintiff is instructed to file a supplemental brief ten days from the

---

[5] For example, in their corrected response filed May 4, 2021, Defendants included testimony from Rafuse, in which Rafuse represented his belief that the Carve Out referred to preexisting responsibilities or liabilities, including the liability Rafuse "had to ACT I" under the Obligation Provision. ECF No. 32-1 at 18.

date of the forthcoming order entering judgment, limited to five pages, and Defendants are granted

leave to file a response ten days from the entry of Plaintiff's supplemental brief, limited to five

pages. The Court will, then, entertain Plaintiff's application for fees, consonant with Federal Rule

of Civil Procedure 54. *See Engel v. Teleprompter Corp.*, 732 F.2d 1238, 1242 (5th Cir. 1984).

## V. CONCLUSION

After careful consideration of the motions, the parties' briefs, and the applicable law, the

Court rules as follows.

**IT IS ORDERED** that the Report of United States Magistrate Judge Manske, ECF No. 17,

is **ADOPTED**. It is **FURTHER ORDERED** that Defendant's objections are **OVERRULED,**

with the single exception noted above. *See* Section IV.A, *supra*.

It is therefore **ORDERED** that Defendants Motion to Dismiss, ECF No. 11, is

**GRANTED-IN-PART** and **DENIED-IN-PART** in accordance with the Report. It is therefore

**ORDERED** that Rafuse's accounting and declaratory judgment claims are **DISMISSED.**

It is **ORDERED** that Plaintiff's Motion to Strike, ECF No. 34, is **DENIED**.

It is **ORDERED** that Defendants' Cross-Motion for Summary Judgment, ECF No. 32-1,

is **DENIED**.

It is **ORDERED** that Rafuse's Motion for Judgment on the Pleadings, ECF No. 21, is

**GRANTED-IN-PART** and **DENIED-AS-MOOT-IN-PART**. A separate order will enter

judgment in Rafuse's favor as to Defendants' counterclaims: (1) breach of contract; (2) a

declaration that Rafuse owes Defendants half of the Audit Settlement pursuant to the Pledge

Agreement; and (3) entitlement of attorneys' fees under § 38.001 of the Texas Civil Practice and

Remedies Code.

In view of these rulings, the only remaining claim in this Action is Rafuse's alternative

claim of indemnification from ACT I and Niggel for the Audit. Having found that Rafuse has no

obligation related to the Audit, the Court *sua sponte* **DISMISSES** Rafuse's alternative claim for indemnification from ACT I and Niggel under Rule 12(b)(6). Any portions of Defendants' Motion to Dismiss and/or the cross-motions for judgment pertaining to that claim are **DENIED-AS-MOOT**.

SIGNED this 1st day of August, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE